**Opinion issued February 13, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00618-CV

————————————

## H2O SOLUTIONS, LTD., Appellant

## V.

## PM REALTY GROUP, LP AND PROVIDENT INVESTOR GROUP, GP, LLC, Appellees

————————————

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-52281**

————————————

## O P I N I O N

Appellant, H2O Solutions, Ltd. ("H2O Solutions"), sued appellees, PM

Realty Group LP and its general partner, Provident Investor Group, GP, LLC

(collectively, "PM Realty"), for breach of contract, quantum meruit, fraud, and negligent misrepresentation arising out of an agreement to provide remediation services in the aftermath of Hurricane Ike. The trial court rendered summary judgment in favor of PM Realty on all claims except for H2O Solutions' negligent misrepresentation claim, which H2O Solutions subsequently nonsuited. On appeal, H2O Solutions contends that (1) the trial court erred in rendering summary judgment because PM Realty failed to conclusively establish its right to judgment as a matter of law; (2) the trial court erred in relying on a written agreement between the parties that was not a valid contract and that only addressed future work to be performed; (3) a material fact issue exists concerning which agreement is the operative agreement between the parties; (4) the trial court erroneously failed to strike a document that was not properly authenticated; and (5) the trial court prematurely rendered summary judgment on its quantum meruit, fraud, and negligent misrepresentation claims. PM Realty responds that H2O Solutions seeks to recover from it under a contract or in quantum meruit, but that H2O Solutions judicially admitted that it performed the work at issue in this dispute pursuant to a different contract with different parties, under which H2O Solutions recovered a settlement award for the same work performed, precluding it from recovering damages from PM Realty.

We agree with PM Realty and affirm the summary judgment in its favor.

2

**Background**

PM Realty provides property management services to the owners of two office buildings located at 1100 NASA Parkway and 1110 NASA Parkway in Houston (collectively, "the Properties"). The Properties are owned by B&R 1100 NASA Parkway Owner, LP, B&R 1100 NASA Parkway GP, Inc., B&R 1110 NASA Parkway Owner, LP, and B&R 1110 NASA Parkway GP, Inc. (collectively, "the B&R Entities"). H2O Solutions is a remediation company that handles, among other things, water-damage restoration, cleanup, and mitigation services.

Hurricane Ike made landfall in the greater-Houston area on September 13, 2008. The Properties were among those in the region that suffered extensive damage as a result. On September 18, 2008, Chuck Deaton with Paramount Insurance Repair Service ("Paramount") informed Matt Burk, H2O Solutions' president, that the Properties needed remediation services. Later that day, Burk met with Deaton and David Morris, PM Realty's construction manager, to inspect the Properties and determine what services needed to be provided. Both buildings required generators, and the entire 60,000-square-foot building at 1110 NASA Parkway required substantial "drying and dehumidification control."

Burk later averred that, on September 19, 2008, he and Morris "negotiated and agreed to the essential terms of the contract, which included scope and price."

3

The B&R Entities' insurance carrier, Travelers Indemnity Company, allegedly approved the terms of this agreement later that day.

The next morning, September 20, 2008, Burk sent Morris the following e-mail:

> Per our conversation, I am sending this e-mail to define the specifications of our proposal. Our proposal has been stated with a not to exceed figure of $6.50 per sq. ft. This allowance will include equipment, labor, and materials for the following:
>
> 2 - 5000 CSM Desiccants
> 60 - Air Movers
> Up to 30 LGR Dehumidifiers
> Antimicrobial
> Wall Venting (drill holes)
>
> The estimated time for this project will be 7 - 10 days. In the event that the project goes the full 10 days, the sq. ft. price will not be exceeded.
>
> The price per sq. ft. does not include the generator or the fuel for the generator.
>
> In the event that more demolition is required, the scope of demolition will be defined and agreed upon prior to commencement.
>
> I have attached an Authorization to Perform Services for your review. This document will need to be signed prior to beginning the project. Also, I have attached a copy of our Insurance.

Shortly after sending this e-mail, Burk sent Morris another e-mail with a document entitled "Authorization to Perform Services and Direction of Payment" attached. This form document, which did not include any information pertinent to this particular project, generally authorized H2O Solutions to "perform any and all necessary cleaning and/or restoration services." According to Burk, he and Morris

4

agreed that the "total remediated square-footage used for purposes of the 'not to exceed $6.50 per square foot' pricing agreement was 60,000," that generators and fuel were not included in that cost, and that the "pricing agreement for the generators and fuel was H2O's cost plus overhead and profit."

Burk averred that he subsequently spoke on the phone with Morris, and Morris agreed that "the scope and pricing detailed in the [first e-mail Burk sent earlier that morning] accurately reflected [their] agreement." Burk asked Morris if he had signed the authorization form, and Morris responded that he had not because he was unable to print the document. Morris told Burk that "he would execute [the forms] and return them to [Burk] as soon as practicable, but due to the rapidly deteriorating condition of the NASA Properties it was imperative for H2O to begin working." It is thus undisputed that H2O Solutions began remediation work on the Properties without having a signed authorization form.

H2O Solutions substantially completed remediation services on the Properties on September 26, 2008, and started removing its equipment. That day, Burk, Morris, and David Acosta, an industrial hygienist, met concerning the indoor air quality levels at 1110 NASA Parkway. Acosta informed Burk and Morris that the air quality was at dangerous levels and that H2O Solutions needed to place additional air scrubbers throughout the building. Burk and Morris discussed this recommendation, and Morris authorized this additional work even though Burk

5

informed him that it would be an additional cost. These additional air scrubbers remained in 1110 NASA Parkway until November 3, 2008.

On September 29, 2008, PM Realty presented Burk with copies of two Limited Scope Service Agreements ("LSSAs"), one for each of the Properties. According to Burk, Melinda Greeson, a property manager at PM Realty, informed him that "signing the [LSSAs was] a mere formality to receive payment, and, if [he] did not sign the [LSSAs], H2O would not be paid for its work." Burk averred that he believed that the LSSAs were vendor agreements for future work because H2O Solutions had already completed the majority of the work at the Properties. Burk averred that no purchase orders were attached to the LSSAs that he executed, and he later averred that he did not receive any purchase orders from PM Realty except through the discovery process.

The opening paragraph of the LSSA for 1100 NASA Parkway provided that the agreement was made "as of the 26th day of September, 2008, by and between PM Realty Group, L.P. as agent for B&R 1100 Nasa Parkway Owner, LP ("Owner") . . . and H2O Solutions ("Contractor") . . . ." This document identified PM Realty as "Manager" and included a provision acknowledging that PM Realty was "acting solely as an agent on behalf of Owner in executing and carrying out the terms of this Agreement and that [PM Realty] assumes no liability whatsoever for the payments required under this Agreement or for any of its terms." The

6

LSSA included the following recital: "Contractor desires to perform the services hereinafter described for the Project and Owner desires to engage Contractor to perform such services." Under a section entitled "Services to be Performed," the LSSA provided that "Contractor shall perform the professional services described on Exhibit A attached hereto (the "Services"). The Services will be performed in a first-class manner, to the satisfaction of Owner and within the time period specified in said Exhibit A." Exhibit A stated:

1. SCOPE OF SERVICES

Contractor shall provide miscellaneous services on an as-needed basis as determined by Owner and/or Manager [PM Realty]. Scope of services shall be further outlined through the issuance of a Purchase Order by Manager at the time services are desired

2. TIME PERIOD FOR SERVICES

Contractor shall perform said services in a reasonable time period as mutually agreed upon by Owner and/or Manager and Contractor

3. WARRANTIES

Contractor shall guarantee and warranty said services for materials and workmanship for a period of one (1) year following completion and acceptance of said work by Owner and/or Manager.

The LSSA also contained a merger clause stating, "All previous oral or written promises and agreements relating to the subject matter of this Agreement are hereby superseded, it being expressly agreed that the terms and provisions of this Agreement shall constitute the full and complete agreement between Owner and Contractor." The LSSA for 1110 NASA Parkway was substantively identical.

On November 11, 2008, Burk e-mailed Morris an invoice totaling $796,642.39 for the work completed at the two Properties. Morris responded with several concerns, including the fact that the invoice "does not list the Client [the B&R Entities] as the building Owner per the Limited Scope Service Agreement," and requested that Burk correct the enumerated problems and submit a corrected invoice. H2O Solutions issued a new invoice to "B&R 1100 NASA Parkway Owner, L.P. c/o P.M. Realty Group."

When PM Realty and the B&R Entities still failed to pay H2O Solutions, H2O Solutions filed affidavits claiming a mechanic's and materialman's lien on each of the Properties. In the affidavit for 1100 NASA Parkway, Burk acknowledged that the B&R Entities, and not PM Realty, owned the Properties. He also averred, "[H2O Solutions] furnished the above-described labor and materials pursuant to an agreement with the Owner, B&R 1100 NASA Parkway Owner, LP . . . by and through B&R 1100 NASA Parkway Owner, LP's agent PM Realty Group, L.P. . . . ." Burk included substantially similar statements in the affidavit for 1110 NASA Parkway.

H2O Solutions filed suit against the B&R Entities, PM Realty, and Provident Investor Group for breach of contract, quantum meruit, tortious interference with contract, and negligent misrepresentation. H2O Solutions alleged that it had a contract with the B&R Entities and that it performed the remediation

8

services at the Properties pursuant to that contract. H2O Solutions asserted its breach of contract and quantum meruit claims against the B&R Entities and its tortious interference and negligent misrepresentation claims PM Realty. H2O Solutions sought recovery of $799,965.48: $114,934.72 for the work completed at 1100 NASA Parkway and $685,034.76 for the work completed at 1110 NASA Parkway. H2O Solutions attached Burk's affidavits claiming mechanic's and materialman's liens to its original petition.

H2O Solutions moved for partial summary judgment against the B&R 1100 Entities on June 10, 2010. In this motion, H2O Solutions again argued that it had entered into a contract with the B&R Entities to perform remediation services at the Properties. H2O Solutions attached, as summary judgment evidence, an affidavit from Burk, in which he averred that H2O Solutions entered into a written contract with the B&R Entities on September 26, 2008, to perform remediation services and that "H2O furnished the work to the Project pursuant to the terms of the written agreement with B&R 1100 . . . ."

H2O Solutions settled its claims with the B&R Entities in December 2010. H2O Solutions released the B&R Entities "from all obligations owing pursuant to those certain Limited Scope Services Agreements both dated September 26th, 2008 (the "Agreements"), by and between, *inter alia*, certain of the Releasees and H2O"

9

in exchange for a payment of $380,000.[1] The B&R Entities also assigned to H2O Solutions any claims that they had against their insurance carrier, Travelers Indemnity Company, for coverage and payment relating to the work completed at the Properties. H2O Solutions later collected $200,000 from Travelers.

In its third amended petition, filed several months after it had settled with the B&R Entities, H2O Solutions alleged that it had entered into two separate contracts with PM Realty "for the furnishing by H2O of water and storm damage clean up and restoration services . . . ." H2O Solutions alleged that it first learned of the existence of the B&R Entities and of PM Realty's status as the B&R Entities' agent at the time it was asked to execute the LSSAs. It also alleged, "The LSSAs are void and unenforceable as they fail for lack of consideration and non-compliance with their terms. Specifically, at the time H2O executed the [LSSAs] H2O had fully completed and furnished the Work to the Projects." H2O Solutions alleged that PM Realty breached the contracts with H2O Solutions when it refused to pay H2O Solutions for the work performed at the Properties. This was the first

---

[1] The settlement agreement defined "Releasees" as B&R 1100 NASA Parkway Owner, LP, B&R 1100 NASA Parkway Owner, GP, Inc., B&R 1110 NASA Parkway Owner, LP, B&R 1110 NASA Parkway Owner, GP, Inc., and Bresler & Reiner, Inc. and their respective partners, affiliates, employees, officers, and directors." PM Realty was not included in the definition of "Releasees."

10

petition in which H2O Solutions asserted that the LSSAs were unenforceable and the first petition in which it asserted breach of contract claims against PM Realty.[2]

On February 17, 2012, PM Realty moved for traditional summary judgment on all of the claims asserted against it except for H2O Solutions' negligent misrepresentation claim. PM Realty argued that no enforceable contract existed between the parties because the parties did not agree on essential terms such as price. Specifically, it argued, "Because H2O thus started work on the project without first confirming the entity that would pay for their work, pricing for some of their work, the owner of the remediated Properties, and other essential terms to this transaction, the parties failed to reach any oral agreement regarding all essential terms of H2O's work at the Properties." PM Realty also argued that no enforceable oral contract existed because the alleged oral contract was "premised on an alleged promise to make a future contract." It pointed out that Burk's first e-mail to Morris on September 20, 2008, stated that H2O Solutions would not begin work until PM Realty executed the work authorization form, and Morris testified in his deposition that he expected H2O Solutions to sign the LSSAs that PM Realty would generate for each of the Properties.

---

[2] H2O Solutions later amended its petition one further time to assert claims for breach of contract, fraud, promissory estoppel, quantum meruit, negligent misrepresentation, and theft of services against PM Realty and Provident Investor Group. As a result of the earlier settlement agreement, H2O Solutions asserted no claims against the B&R Entities in this petition.

11

PM Realty also argued that H2O Solutions could not recover for breach of an oral contract because the LSSAs, which H2O Solutions had admitted on several occasions were valid, superseded any prior oral promises that PM Realty had made. PM Realty pointed to four instances in which Burk had acknowledged in a sworn statement that the LSSAs were valid and that H2O Solutions had performed its work at the Properties pursuant to its contracts with the B&R Entities.[3] It argued that, because of these judicial admissions, H2O Solutions was "bound by the terms of the LSSAs" and prohibited from arguing that the LSSAs were unenforceable. PM Realty also argued that these statements that H2O Solutions entered into LSSAs with the B&R Entities "are contrary to H2O's claim that it entered into a contract[] directly with PM Realty for the work at the Properties . . . ." PM Realty further argued that both LSSAs contain integration clauses, and, thus, "H2O's execution of the LSSAs presumes that all prior negotiations and agreements related to the transaction have been merged into these agreements."

---

[3]     PM Realty identified these instances as: (1) and (2) Burk's affidavits supporting H2O Solutions' mechanic's and materialman's liens against PM Realty, in which he admitted that H2O Solutions entered into an agreement with the B&R Entities; (3) Burk's affidavit supplied in a summary judgment proceeding against the B&R Entities, in which he admitted that H2O Solutions performed the work at the Properties pursuant to a contract with the B&R Entities; and (4) the settlement agreement between H2O Solutions and the B&R Entities.

PM Realty also argued that the existence of the LSSAs barred H2O Solutions' claims for quantum meruit and promissory estoppel. It also argued that H2O Solutions could not maintain its quantum meruit and theft of services claims against PM Realty because the remediation services that it provided were provided for the benefit of the B&R Entities, not PM Realty. Finally, it argued that H2O Solutions' fraud claim lacked merit because any alleged oral misrepresentations made by PM Realty were contradicted by the express terms of the LSSAs and thus could not support a fraudulent inducement claim.

As part of its summary judgment evidence, PM Realty attached the business-records affidavit of Melinda Greeson, one of its senior property managers. She averred that, as a senior property manager, she had care, custody, and control over the documents that PM Realty generated as part of its duties managing the Properties, including "any contracts for repairs at the Properties, correspondence between building contractors and PM Realty employees regarding the Properties, and other documents." Greeson attached several documents to her affidavit, including e-mail correspondence between Burk and Morris and the two LSSAs.

Both of the LSSAs that PM Realty submitted as summary judgment evidence had purchase orders attached to them. The purchase orders stated "Specifications Attached" under "Description" of services provided and were

followed by a typed page that stated, using the purchase order for 1100 NASA Parkway as an example,

> PO #4508-602405
>
> H2O Solutions
> and
> B&R 1100 Nasa Parkway Owner, LP
>
> Description:
> Provide dry water de-humidifiers and generators as may be required to remove humidity and return environment to acceptable condition.
>
> The cost of services performed to be determined by submittal, audit, review and approval by owner of costs incurred for actual time and materials in performing these services as submitted based upon the attached unit cost sheet.
>
> The "Not to Exceed" estimate for performing these services is mutually agreed not to exceed $6.50 per square foot of damaged and re-mediated area.

The purchase order for 1110 NASA Parkway was substantially identical. The issue date on these purchase orders is illegible in the appellate record.

H2O Solutions objected to the authenticity of the LSSAs and the associated purchase orders. It argued that Greeson lacked the personal knowledge to authenticate the purchase orders and the LSSAs because she had testified in her deposition, an excerpt of which was attached to H2O Solutions' summary judgment response, that she did not know who at PM Realty had created these documents. H2O Solutions also argued that the purchase orders could not be authenticated because no one at PM Realty knew who created the purchase orders,

14

PM Realty did not have the original purchase orders, and the purchase orders were dated eleven days before the associated LSSAs, and, as a result, their "method or circumstances of preparation indicate lack of trustworthiness." H2O Solutions also objected to PM Realty's use of the settlement agreement between H2O Solutions and the B&R Entities on the ground that the agreement was used to "prove liability for or invalidity of the claim or its amount" in violation of Texas Rule of Evidence 408.

H2O Solutions argued that Burk and Morris orally agreed to the essential terms of the contract, including the scope of the work and the price, on September 19, 2008. Burk memorialized this oral agreement in two e-mails sent to Morris the next morning, and Morris agreed that he would sign the work authorization form sent to him in one of the e-mails. H2O Solutions argued that, "based on Mr. Morris['] representations that they had reached an agreement regarding scope and price for H2O's services and that he would sign H2O's Work Authorizations, H2O immediately began providing its remediation services and equipment . . . ." It contended that Burk signed the LSSAs on September 29, 2008, after H2O Solutions had completed most of the work at the Properties, because he was informed by Greeson that signing the LSSAs was "a mere formality to receive payment." Burk averred that no purchase orders were attached to the LSSAs that he signed on behalf of H2O Solutions, nor did he ever receive any purchase orders

15

from PM Realty. H2O Solutions also argued that PM Realty never disclosed that it was acting in an agency capacity and that Burk at all times believed that he was contracting with PM Realty, not the B&R Entities.

H2O Solutions further argued that it had not made any judicial admissions that the LSSAs were binding and valid contracts governing its work at the Properties because none of the alleged admissions were conclusive. It also contended that the "LSSAs fail as contracts because they are unsupported by consideration. The LSSAs are dated September 26, 2008. H2O completed its drying work on the project before this date." H2O Solutions argued that, even if the LSSAs were valid, the merger clause contained within the LSSAs "would not apply to H2O's prior contract with PM Realty" because the LSSAs "are contracts only between H2O and the B&R entities."

H2O Solutions also argued that, if no contract existed with PM Realty, it could recover under quantum meruit, because it furnished valuable services to PM Realty "because [the remediation services] allowed PM Realty to fulfill its contractual obligations to the B&R entities." It also argued that its fraud claim was "based on PM Realty's fraud in inducing H2O into signing the LSSAs by misrepresentations and subsequent forgery of Purchase Orders to complete the LSSA contracts." According to H2O Solutions, the correspondence between Burk and Morris established a valid contract, but the method of executing this contract

16

was against "company protocol" and left PM Realty liable to H2O Solutions. PM Realty then "tricked" H2O Solutions into signing the LSSAs, which were "insufficient as contracts because they did not contain the specific terms of H2O's work on the job," and created "false and back-dated purchase order documents to make it appear that PM Realty had issued purchase orders pursuant to the LSSA agreements, thereby creating apparently valid contracts." H2O Solutions produced no evidence, aside from its argument in its summary judgment response, to support its contention that PM Realty forged the purchase orders attached to the LSSAs.

On March 30, 2012, the trial court overruled H2O Solutions' objections to Greeson's affidavit and rendered summary judgment in favor of PM Realty. H2O Solutions then non-suited its remaining claim for negligent misrepresentation. H2O Solutions moved for a new trial, and the trial court denied this motion. This appeal followed.

**Standard of Review**

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). When a defendant moves for

17

summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). To determine if the nonmovant has raised a fact issue, we view the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

**Judicial Admissions Concerning Contract with B&R Entities**

In its first issue, H2O Solutions contends that PM Realty failed to conclusively establish its right to judgment as a matter of law. In its second issue,

18

H2O Solutions contends that the trial court erred in giving the LSSAs conclusive effect because the LSSAs were not enforceable and only addressed future work. In its third issue, H2O Solutions contends that it raised a fact issue precluding summary judgment because the parties presented two "materially different versions of the purported agreement between them."

PM Realty argues that the trial court properly rendered summary judgment on H2O Solutions' breach of contract and quantum meruit claims because H2O Solutions admitted, on multiple occasions throughout the judicial proceedings, that it completed the remediation services for the Properties pursuant to a contract with the B&R Entities, and it obtained two valuable settlement awards—from the B&R Entities and from Travelers, the B&R Entities' insurance carrier—on the basis of these admissions. We agree with PM Realty.

Generally, a party's pleadings do not constitute summary judgment evidence, even if sworn or verified. *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 356–57 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995)). A party may, however, plead itself out of court when it pleads facts that affirmatively negate its cause of action. *Id.* at 357 (citing *Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974)). Under those circumstances, the pleadings of a non-movant may constitute summary judgment evidence "when they contain statements rising to the

19

level of judicially admitting a fact or conclusion which is directly adverse to that party's theory of defense or recovery." *Id.*; *Judwin Props., Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 504 (Tex. App.—Houston [1st Dist.] 1995, no writ); *David Gavin Co. v. Gibson*, 780 S.W.2d 833, 835 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

Judicial admissions result "when a party makes a statement of fact which conclusively disproves a right of recovery or defense he currently asserts." *Khan*, 371 S.W.3d at 357 (quoting *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 740 (Tex. App.—Houston [14th Dist.] 1998, no pet.)). The elements for establishing that a statement is a judicial admission are: (1) the statement must be made in the course of a judicial proceeding; (2) it must be made contrary to an essential fact or defense asserted by the party; (3) it must be deliberate, clear, and unequivocal; (4) it cannot be destructive of the opposing party's theory of recovery or defense; and (5) enforcing the statement as a judicial admission would be consistent with public policy. *Id.*; *In re Spooner*, 333 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (holding that judicial admissions must be clear, deliberate, and unequivocal) (citing *Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996)). An assertion of fact pleaded in the alternative is not a judicial admission. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001).

20

Judicial admissions that are clear and unequivocal have a conclusive effect and bar the admitting party from later disputing the admitted fact. *Id.*; *In re Spooner*, 333 S.W.3d at 764 ("A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it."). "This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement." *In re Spooner*, 333 S.W.3d at 764; *Bowen v. Robinson*, 227 S.W.3d 86, 92 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) ("Contradictory positions taken in the same proceeding may raise issues of judicial admission but do not invoke the doctrine of judicial estoppel."); *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 174 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party. This doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one in which it had acquiesced, or from which it had accepted a benefit."). The party relying on its opponent's pleadings as judicial admissions must protect its record by "objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted." *Houston*

21

*First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983); *USAA Cnty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Here, H2O Solutions repeatedly alleged in its original petition, filed on August 14, 2009, that it completed the remediation services at the Properties pursuant to contracts entered into with the B&R Entities, by and through their agent PM Realty. For example, H2O Solutions alleged, "Plaintiff would respectfully show that it entered into agreements with [the B&R Entities], by and through their agent, Defendant PM REALTY, for the furnishing by H2O of water and storm damage clean up and restoration services ("services") in connection with two certain construction projects . . . ." It also alleged, "H2O fully performed all of its obligations pursuant to its agreements with [the B&R Entities]." H2O Solutions did not allege that the contracts entered into with the B&R Entities only governed a portion of the remediation services that it had performed, and it did not allege a breach of contract claim against PM Realty. The only claims it asserted against PM Realty in this petition were claims for tortious interference with a contract and negligent misrepresentation.[4] H2O Solutions attached to its original petition two

---

[4] In asserting this tortious interference claim, H2O Solutions alleged:

> Plaintiff had a valid contract with Defendants, B&R 1100 LP, B&R 1100 GP, B&R 1110 LP, and B&R 1110 GP for the Projects to furnish the services described above in Paragraph 11 of this petition. The contract or agreements for the Projects were negotiated and obtained for the owners of the

22

affidavits by Matt Burk claiming mechanic's and materialman's liens on 1100 NASA Parkway and 1110 NASA Parkway. These affidavits included the following statement: "[H2O Solutions] furnished the above-described labor and materials pursuant to an agreement with the Owner, B&R 1100 NASA Parkway Owner, LP . . . by and through [the Owner's] agent PM Realty Group, L.P. . . . ."

H2O Solutions moved for partial summary judgment against the B&R 1100 NASA Parkway entities on June 10, 2010. It contended that it performed the remediation services at the Properties pursuant to a contract with the B&R Entities. In this motion, H2O Solutions argued, "Plaintiff would respectfully show that, with respect to Defendants B&R 1100[,] Plaintiff and Defendants B&R 1100 entered into a contract for the furnishing of restoration services and related labor and materials (hereinafter referred to as the 'Work') in connection with a certain construction project . . . ." H2O Solutions further argued, "The Plaintiff fully furnished the Work to the Project and Defendants B&R 1100 as agreed and pursuant to the terms of the contract, without complaint or rejection."

H2O Solutions attached another affidavit by Burk to this motion. In this affidavit, Burk averred, "On or about September 26th, 2008 H2O and B&R 1100 entered into a written contract for the furnishing of restoration services and related

---

Projects by and through their authorized agent PM REALTY.
The Defendant PM Realty willfully and intentionally interfered with the contract . . . .

23

labor and materials (hereinafter referred to as the 'Work') in connection with a certain construction project . . . . H2O furnished the work to the Project pursuant to the terms of the written agreement with B&R 1100, without complaint or rejection by B&R 1100."

H2O Solutions amended its petition on November 19, 2010.  This petition contained substantially similar allegations to the original petition, with H2O Solutions once again alleging that it completed the work on the projects pursuant to agreements with the B&R Entities.  H2O Solutions did not assert a breach of contract claim against PM Realty.

In December 2010, H2O Solutions settled its claims against the B&R Entities for $380,000.  In the settlement agreement, H2O Solutions released the B&R Entities

> from all obligations owing pursuant to those certain Limited Scope Services Agreements both dated September 26th, 2008 (the "Agreements"), by and between, *inter alia*, certain of the Releasees and H2O with respect to certain work described as emergency restoration and moisture remediation labor, materials, and services (the "Work") performed by H2O at the properties known as 1100 and 1110 NASA Parkway, Houston, Texas 77058 (the "Properties").

In this agreement, the B&R Entities assigned their claims against Travelers, their insurance carrier, to H2O Solutions.

H2O Solutions then filed a second amended petition on April 8, 2011.  This petition contained the same factual allegations as the original petition and the first

amended petition. This petition acknowledged the existence of the settlement agreement and asserted a breach of contract claim, but it asserted this claim only against Travelers, not against PM Realty. This petition continued to assert a tortious interference claim against PM Realty, alleging, "Plaintiff had a valid contract with the B&R Defendants for the Projects to furnish the services described above in Paragraph 12 of this petition. The contracts for the Projects were negotiated and obtained for the Owners of the Projects by and through their authorized agent PM REALTY." H2O Solutions eventually recovered $200,000 from Travelers on these claims.

On July 11, 2011, H2O Solutions filed its third amended petition. This petition was the first to allege that H2O Solutions had a contract directly with PM Realty, that PM Realty breached its contract with H2O Solutions, that H2O Solutions was unaware that the B&R Entities owned the Properties until it was presented with the LSSAs, and that the LSSAs were unenforceable.

H2O Solutions filed its fourth amended petition, its live pleading, on January 13, 2012, and asserted claims solely against PM Realty and Provident Investor Group. It again asserted a breach of contract claim against PM Realty, alleging, "Plaintiff would respectfully show that it entered into a contract and/or contracts (the 'Contract(s)') with Defendant PM REALTY for the furnishing by H2O of water and storm damage clean up, restoration services, generators, and related

25

labor and materials (the 'Work') in connection with two certain construction projects . . . ."

In its summary judgment motion, PM Realty challenged H2O Solutions' attempt to disavow the LSSAs by arguing that H2O Solutions had judicially admitted, through Burk's three affidavits and the settlement agreement with the B&R Entities, that the work that H2O Solutions had performed at the Properties was governed by a written contract with the B&R Entities. It attached all of these documents as summary judgment evidence. It also pointed out that H2O Solutions obtained a settlement agreement from the B&R Entities and Travelers on the basis that it and the B&R Entities had a valid contract governing the work performed. Thus, PM Realty contended that H2O Solutions could not, at this point in the litigation, argue that it contracted directly with PM Realty and that this contract actually governed the work performed at the Properties instead of its contract with the B&R Entities.

The statements contained in Burk's affidavits were made in the course of judicial proceedings, were contrary to a fact now asserted by H2O Solutions, namely, that H2O Solutions performed the work at the Properties pursuant to a contract made directly with PM Realty, were deliberate, clear, and unequivocal, and were not destructive of PM Realty's defense. *See Khan*, 371 S.W.3d at 357 (stating requirements to establish that statement constitutes judicial admission).

26

H2O Solutions contends that these statements are not "deliberate, clear, and unequivocal," and, thus, do not constitute judicial admissions, because they are contradicted by the allegations in its fourth amended petition. H2O Solutions is correct in acknowledging that its fourth amended petition asserts facts contrary to those it had asserted for the first two years of this litigation, but this fact does not destroy PM Realty's ability to rely on these statements as judicial admissions because PM Realty challenged these contrary factual assertions in its summary judgment motion. *See Houston First Am. Sav.*, 650 S.W.2d at 769 (holding that party relying on opposing party's statements in pleadings as judicial admissions must "protect [its] record" by objecting to evidence contrary to that factual admission). Moreover, at the time Burk made the affidavits at issue, he clearly and unambiguously stated that H2O Solutions performed its work at the Properties pursuant to a written contract with the B&R Entities. He did not state in any of these affidavits that H2O Solutions had a contract directly with PM Realty or that H2O Solutions performed its obligations at the Properties pursuant to a contract with PM Realty. H2O Solutions may have later contradicted Burk's affidavits with the allegations in its fourth amended petition, but Burk's statements themselves, relied upon by PM Realty, deliberately, clearly, and unequivocally admitted that H2O Solutions performed the work on the Properties pursuant to an agreement with the B&R Entities.

27

The final element for establishing that statements constitute judicial admissions is that enforcing the statement as a judicial admission "would be consistent with public policy." *Khan*, 371 S.W.3d at 357. Relying on its initial position that it had performed the remediation services under a contract with the B&R Entities, H2O Solutions obtained a $380,000 settlement from the B&R Entities, as well as an assignment of the B&R Entities' rights to payment from Travelers, its insurance carrier. After it secured this settlement, H2O Solutions changed its position to argue that the LSSAs, the very contracts that had formed the basis for the settlement agreement, were unenforceable and that it had directly contracted with PM Realty. By admitting that it performed all of the work at issue on the Properties pursuant to a written contract with the B&R Entities and obtaining a settlement award from those entities based on that written contract, H2O Solutions negated its later claim that it never had a valid contract with the B&R Entities but instead performed the work at the Properties pursuant to an oral contract with PM Realty. These two positions are contradictory and inconsistent and cannot both be maintained.

We conclude, under these factual circumstances, that it would be unjust to allow H2O Solutions to disavow a contract that it had previously asserted with one group of entities and then proceed to recover for the same work from a different party under a different contract when it had used the first asserted contract to

28

obtain a valuable settlement award. *See id.* ("The public policy concerning judicial admissions is that it would be unjust to permit a party to recover after he has sworn himself out of court by a clear, unequivocal statement."); *see also Schubert*, 264 S.W.3d at 6 (noting that "essential function" of related doctrine of judicial estoppel "is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage").

We therefore conclude that the statements in Burk's affidavits that H2O Solutions performed the work at the Properties pursuant to written contracts with the B&R Entities constitute judicial admissions. *See Khan*, 371 S.W.3d at 357. As such, these admissions prohibited H2O Solutions from asserting that a different contract with a different party governed the work that it had performed at the Properties. *See Wolf*, 44 S.W.3d at 568 (holding that judicial admissions bar party from later disputing admitted fact). H2O Solutions' judicial admissions establish that it performed the work at the Properties pursuant to a contract with the B&R Entities, not pursuant to a contract with PM Realty. Thus, the trial court correctly concluded that PM Realty had conclusively established that it did not have a valid contract with H2O Solutions. As a result, PM Realty conclusively established that H2O Solutions could not recover from it in contract, and the trial court correctly rendered summary judgment in favor of PM Realty on H2O Solutions' breach of

contract claim.[5] *See Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 56 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (stating that, to prevail on breach of contract claim, plaintiff must prove, among other elements, existence of valid contract).

We overrule H2O Solutions' first, second, and third issues.

**Admission of Melinda Greeson's Affidavit and the LSSAs**

In its fourth issue, H2O Solutions contends that the trial court abused its discretion when it declined to exclude the business-records affidavit of Melinda Greeson, which PM Realty had used to authenticate the LSSAs. H2O Solutions contends that because Greeson's affidavit could not properly authenticate the LSSAs, the LSSAs were not properly before the trial court and that the trial court should have denied PM Realty's summary judgment motion.

The decision to admit or exclude evidence is "a matter committed to the trial court's sound discretion." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *see also In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) ("We review a trial court's decision to admit or exclude evidence for an abuse of discretion."). The trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42

---

[5] We address the effect of H2O Solutions' judicial admissions on its quantum meruit claim separately below.

30

(Tex. 1985)).  We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling.  *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *D & M Marine, Inc. v. Turner*, 409 S.W.3d 693, 699 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).  Even if the trial court erroneously admitted improper evidence, to warrant reversal the complaining party must demonstrate that the error probably resulted in an improper judgment, which generally requires a showing that the judgment turned on the particular evidence in question.  *Ortega v. CACH, LLC*, 396 S.W.3d 622, 629 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Interstate Northborough P'ship*, 66 S.W.3d at 220).

The requirement of authentication as a condition precedent to admissibility of evidence may be satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims."  TEX. R. EVID. 901(a); *In re J.P.B.*, 180 S.W.3d at 575; *Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs., Inc.*, 346 S.W.3d 172, 180 (Tex. App.—Amarillo 2011, pet. denied) ("Evidence is authenticated by proof that the challenged evidence is what its proponent claims it to be.").  A proponent of evidence is not required bring forth "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility" for business records accompanied by an affidavit that complies with Rule of Evidence

902(10). *See* TEX. R. EVID. 902(10) (providing types of evidence that are self-authenticating).

H2O Solutions argues that the trial court should have determined that Greeson could not authenticate the LSSAs and their attached purchase orders, and thus should not have considered the LSSAs as summary judgment evidence, because Greeson testified in her deposition that she did not know who created the LSSAs and the purchase orders, and she therefore could not testify that the LSSAs were made by, or from information transmitted by, a person with knowledge.

Rule 902(10)(b), which provides an example of an affidavit that a person may use to authenticate a business record, does not require the affiant to identify the particular person who originally created the business record in order to satisfy the authentication predicate. *See id.* 902(10)(b) (providing that "affidavit which substantially complies with the provisions of this rule shall suffice" to authenticate business record). Rule 902(10)(b) suggests the following to include in the business records affidavit:

> I am the custodian of the records of _____. Attached hereto are ___ pages of records from _____. These said ___ pages of records are kept by _____ in the regular course of business, and it was in the regular course of business of _____ for *an employee or representative* of _____, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

*Id.* (emphasis added); *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Testimony by a witness or affiant identifying the exhibits as the business records of the proponent of the evidence "is sufficient evidence to satisfy the authentication requirement of Rule 901(a), regardless of whether [the witness] had personal knowledge of the contents of this evidence." *See Concept Gen. Contracting*, 346 S.W.3d at 181; *see also Kirwan v. City of Waco*, 249 S.W.3d 544, 549 (Tex. App.—Waco 2008) (holding, in case involving authentication of photographs, that Rule 901 does not require that affiant take photographs, observe their making, or know when photographs were taken; instead, "[a]ll that is necessary is testimony from a witness with personal knowledge that the photographs accurately depict what they are 'claimed to be'"), *rev'd on other grounds*, 298 S.W.3d 618 (Tex. 2009).

Here, Melinda Greeson averred that she is a senior property manager at PM Realty, and, as such, she has "custody, care and control over the documents that PM Realty generated as part of its business in managing the properties on behalf of" the B&R Entities. She stated that these records include "PM Realty's management contracts for the Properties, any contracts for repairs at the Properties, correspondence between building contractors and PM Realty employees regarding the Properties, and other documents." She further averred,

These records are kept by PM Realty in the regular course of business, and it was the regular course of business for an employee of PM Realty, with personal knowledge of the events recorded therein to make such records or transmit information to be included in such records. The records are made at or near the time the events recorded therein occurred. The records attached are exact duplicates of the originals.

Greeson averred that Exhibit E "is a true and correct copy of the Limited Scope Service Agreement between H2O Solutions, Ltd. and B&R 1100 NASA Parkway Owner, L.P. for certain services at the 1100 NASA Parkway property" and that Exhibit F "is a true and correct copy of the Limited Scope Service Agreement between H2O Solutions, Ltd. and B&R 1110 NASA Parkway Owner, L.P. for certain services at the 1110 NASA Parkway property."

Greeson's affidavit "substantially complies with" the example affidavit set out in Rule 902(10)(b). *See* TEX. R. EVID. 902(10)(b). She averred that the attached records, which included both LSSAs, were kept by PM Realty in the regular course of its business, that it was in the regular course of business for an employee of PM Realty who had knowledge of the relevant information to make the records, that the records were made at or near the time of the events recorded, and that the records were exact duplicates of the originals. This is all of the information that is required under Rule 902(10)(b).[6] *See id.* Greeson's affidavit

---

[6] H2O Solutions also argues that PM Realty did not meet the authentication predicate because "a party may not authenticate a document as a business record where 'the method or circumstances of preparation indicate lack of

34

testimony is evidence that Exhibits E and F are what PM Realty claims them to be, namely, the LSSAs that H2O Solutions entered into with the B&R Entities. *See* TEX. R. EVID. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); *Concept Gen. Contracting*, 346 S.W.3d at 181 ("Coiner's testimony that the evidence accurately portrays what AMS claims it portrays, which is the records and photographs from the BW project that were compiled during work on the project, is sufficient evidence to satisfy the authentication requirement of Rule 901(a), regardless of whether Coiner had personal knowledge of the contents of this evidence.").

We therefore conclude that Greeson's affidavit properly authenticated PM Realty's Exhibits E and F to its summary judgment motion—the LSSAs entered into between H2O Solutions and the B&R Entities.[7] We hold that the trial court

---

trustworthiness'" and cites Rule 902(10) for this proposition. Trustworthiness of the document is not a consideration when determining whether a document has been properly authenticated under Rules 901 or 902(10). *See* TEX. R. EVID. 901, 902(10). Instead, it is a consideration when trying to admit a business record under the business-records exception to the hearsay rule. *See* TEX. R. EVID. 803(6) (providing that business records fall under exception to hearsay rule "unless the source of information or the methods or circumstances of preparation indicate lack of trustworthiness"). Authenticity of a document and admissibility of that document under an exception to the hearsay rule are separate inquiries. H2O Solutions does not contend that the LSSAs constitute inadmissible hearsay.

[7] We also note that H2O Solutions itself attached Exhibit E—the LSSA, with an attached purchase order, concerning 1100 NASA Parkway—as an exhibit to its

did not abuse its discretion in admitting Greeson's affidavit and the LSSAs and their attached purchase orders as summary judgment evidence.

We overrule H2O Solutions' fourth issue.

**H2O Solutions' Remaining Claims**

H2O Solutions also argues that because a fact finder has not "determined the factual issues relating to the contractual relationship between H2O and PM Realty," the trial court prematurely rendered summary judgment on its claims for quantum meruit, fraud, and negligent misrepresentation.[8]

*A.     Quantum Meruit*

Quantum meruit is an equitable remedy that does not arise out of a contract but is instead independent of it. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 469 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).   A party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding); *Arias*, 265 S.W.3d at 469 (holding that when

___

June 10, 2010 motion for partial summary judgment filed against the B&R 1100 Entities.

[8]     On appeal, H2O Solutions does not challenge the trial court rendition of summary judgment on its promissory estoppel and theft of services claims.

contract covering services and materials in question exists, party cannot recover in quantum meruit unless applicable exception to general rule applies).

Here, we have already held that H2O Solutions is bound by its judicial admission that it completed its work on the Properties pursuant to a contract with the B&R Entities and that the trial court appropriately rendered summary judgment on H2O Solutions' breach of contract claim on this basis. Because a valid contract covers the services in question, H2O Solutions cannot recover in quantum meruit, and there is no need to remand this claim to the trial court for any further proceedings. *See In re Kellogg Brown & Root*, 166 S.W.3d at 740; *Arias*, 265 S.W.3d at 469.

## B.    Fraud

In its summary judgment response, H2O Solutions argued that its fraud claim was "based on PM Realty's fraud in inducing H2O into signing the LSSAs by misrepresentations and subsequent forgery of Purchase Orders to complete the LSSA contracts."[9]

---

[9] H2O Solutions' fourth amended petition alleges the following with respect to the fraud claim:

> Defendant PM REALTY made representations to the Plaintiff which were material and false. When PM REALTY made the representations, PM REALTY knew the representations were false, or made the representations recklessly, as a positive assertion, and without knowledge of its truth. PM REALTY made the representations with the intent that the Plaintiff act on the

One of the elements that a plaintiff must prove to establish a fraudulent inducement claim is that it actually and justifiably relied on the alleged misrepresentations to suffer injury. *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001) ("That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties."). Reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law. *DRC Parts & Accessories*, 112 S.W.3d at 858.

H2O Solutions has not, at any stage in the litigation, including on appeal, identified the specific misrepresentations by PM Realty that, it contends, fraudulently induced it to enter into a contract. To the extent H2O Solutions claims that PM Realty misrepresented that it owned the Properties and that it would be responsible for paying H2O Solutions, the express terms of the LSSAs clearly state that the B&R Entities own the Properties, that PM Realty is the agent of the B&R Entities, and that PM Realty, as the agent, assumes no liability for

---

representations. The Plaintiff acted on the representations which caused the Plaintiff injury.

H2O Solutions did not allege fraudulent inducement in its fourth amended petition.

38

payments under the contract. Thus, any alleged misrepresentations concerning these issues are contradicted by the express terms of the contract and cannot form the basis of H2O Solutions' fraudulent inducement claim. *See id.*; *see also DeClaire v. G&B Mcintosh Family Ltd. P'ship*, 260 S.W.3d 34, 46–47 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding same). To the extent it claims that Greeson made an actionable misrepresentation when she told Burk that signing the LSSAs was a "mere formality" and was necessary to receive payment and that this statement induced H2O Solutions to sign the LSSAs, even though it had already entered into an oral contract with PM Realty, we again note that the "prevailing rule" is that "a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract." *DRC Parts & Accessories*, 112 S.W.3d at 859.

We conclude that H2O Solutions has not demonstrated that a material fact issue exists with respect to its fraud claim, and, therefore, the trial court correctly rendered summary judgment on this claim.

### C. *Negligent Misrepresentation*

H2O Solutions lastly states that the trial court improperly rendered summary judgment on its negligent misrepresentation claim. PM Realty points out that it did not move for summary judgment on this claim and that, in fact, H2O Solutions

nonsuited this claim after the trial court rendered summary judgment. H2O Solutions provides no argument or authorities supporting its contention that this claim should be considered by a fact finder on remand. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 99 (Tex. 2006) (per curiam) ("[T]he nonsuit extinguishes a case or controversy from 'the moment the motion is filed' . . . .") (citing *Shadowbrook Apartments v. Abu-Ahmad*, 783 S.W.2d 210, 211 (Tex. 1990) (per curiam)).

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.