

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00215-CV

———————————————

DEMETRIA WASHINGTON, Appellant

V.

YELLOWFIN LOAN SERVICING CORP., AS THE SUCCESSOR IN INTEREST
TO OPTION ONE MORTGAGE CORPORATION, Appellee

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2020-003712-3

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

This is an appeal from a suit to recover the balance due on a second lien purchase money note. Following a bench trial, the trial court awarded Appellee Yellowfin Loan Servicing Corp. a judgment against Appellant Demetria Washington for $22,517.11, as well as attorney's fees. In eight issues, Washington argues that the debt was not properly accelerated due to notice not being sent in the required manner and that the trial court therefore erred by awarding damages, that the trial court abused its discretion by overruling her objections to the notice documents, and that the trial court abused its discretion by admitting testimony about the notice documents and the amount due. Because we hold that none of Washington's issues have merit, we affirm.

### II. Factual Background[1]

At the bench trial, Matthew Miller, the President of Yellowfin, testified that he is the custodian of records and that he is familiar with the manner in which records are created and maintained by Yellowfin. He explained that he had executed a business-records affidavit and that the records attached to the business-records affidavit were contained within Yellowfin's business records. The business-records

---

[1]Because Washington does not raise challenges to the note or to Yellowfin's status as note holder, we omit the details regarding the note's inception and history and focus instead on the testimony and evidence relevant to Washington's notice arguments. Additional facts are included, as needed, within the analysis of various issues.

affidavit and attached business records were included in Plaintiff's Exhibit No. 1, which was the sole exhibit admitted during the bench trial. The business records included the following documents:

- "Purchase Money Note (Fixed Rate – Second Lien)";

- various allonges to the note;

- "Purchase Money Deed of Trust";

- "Assignment of Deed of Trust";

- "Loan Amortization Schedule";

- a letter from Yellowfin to Washington with the heading "Notice Under Fair Debt Collection Practices Act";

- a document from Hatteras—a vendor that generated documents on Yellowfin's behalf—stating that it had received a request from its client "SFYELL10" to generate a demand letter to Washington on January 14, 2020;

- a letter from Yellowfin to Washington with the heading "Notice of Intent to Accelerate and Right to Cure";

- a document from Hatteras stating that it had received a request from its client "SFYELL10" to generate an intent letter to Washington on February 25, 2020;

- a letter from Yellowfin to Washington with the heading "RE: Notice of Acceleration"; and

- a document from Hatteras stating that it had received a request from its client "SFYELL10" to generate an acceleration notice to Washington on March 25, 2020.

The three Hatteras documents concluded with "I certify that the above is true and correct to the best of my knowledge" and a line stating, "Signature of Hatteras, Inc. Representative."

Before the exhibit was admitted, Washington asked and received permission to take Miller on voir dire. Washington questioned Miller about the three notice letters, and Miller explained that the notice letters were generated and sent by his letter vendor Hatteras. Miller said that he gives Hatteras "the information and the letter[,] and they mail the letter." He stated that he had "included an affidavit" to reflect that the notice of acceleration had been sent. Miller's reference to the Hatteras documents as "affidavits" caused some confusion, but Yellowfin's counsel clarified that the Hatteras documents were actually certifications.[2] Washington objected to the admission of the exhibit, arguing that the notice letters were generated by a third party; that the business records were untrustworthy and constituted hearsay; and that if they were admissible, they should be given no probative weight.

The trial court stated,

I think what you're [Washington's counsel] arguing really goes to the weight and not the admissibility of the document because --

. . . .

. . . [Miller is] saying, ["T]hese are in my business records, I asked these people to send a letter, [and] they told me they did.["] Now,

---

[2]Later during his testimony, Miller explained that Hatteras sends all of Yellowfin's letters and that Yellowfin uses Hatteras "because they have the certification that tells us when they mailed it out."

4

whether or not the trier of fact believes that they did based on [Miller's] statement to the best of [his] knowledge . . . goes to the weight that a finder of fact gives to these documents. But I don't think it goes to the fact that they can be . . . admitted.

The trial court overruled Washington's objections and admitted the exhibit.

Throughout the bench trial, although Washington did not testify, her counsel argued that Yellowfin had not proved that it had sent notice of intent to accelerate to Washington. The trial court, however, disagreed and concluded, "So it seems like certainly by the time [Washington] was served she had notice. But I also have documents that indicate that [Yellowfin] transmitted the notice. And . . . more likely than not, I believe the notice was sent and the acceleration as well."

### III.  Analysis[3]

A.  **Evidentiary Challenges - the Admissibility of and the Weight to be Given to the Notice Documents and the Hatteras Documents, as well as to the Testimony on Such Documents**

In her third, fourth, fifth, and sixth issues, Washington challenges the following documents that were admitted into evidence: "Notice Under Fair Debt Collection Practices Act," "Notice of Intent to Accelerate and Right to Cure," and "Notice of Acceleration" (collectively, the Notice Documents). Washington contends that the trial court abused its discretion by admitting the Notice Documents, by giving the

---

[3]Although Washington sets forth eight issues under the heading in her brief labeled as "Issues Presented – TRAP 38.1(f)," the argument section found on pages 10 to 21 of her brief does not contain a single heading or any labels to designate which issue she is arguing. Washington has therefore put an onerous burden on this court to attempt to decipher what arguments she is making for each of her eight issues, many of which are similar or overlapping.

Notice Documents any probative value, by overruling her hearsay objection to the Notice Documents, and by overruling her lack-of-trustworthiness objection to the Notice Documents. In her seventh issue, Washington argues that the trial court abused its discretion by overruling her lack-of-personal-knowledge objections to Miller's testimony about the Notice Documents. We set forth the standard of review applicable to these issues and then address and reject each of Washington's arguments.

We review a trial court's evidentiary rulings for abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without regard for any guiding principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989).

### 1. The Notice Documents are admissible under the business-records exception to the hearsay rule.

In Washington's third issue, she generally challenges the trial court's admission of the Notice Documents. Because Washington failed to delineate her arguments in the argument section of her brief, it is unclear what her specific argument is as to the Notice Documents' admissibility. She includes one statement that the Notice Documents "fail to meet the business[-]records predicate of TRE 902(10) and TRE 803[](6) as their forwarding to the maker of the documents has been disclaimed."

6

Additionally, in her fifth issue, Washington argues that the trial court abused its discretion by overruling her hearsay objection to the Notice Documents. We address these issues together and conclude that the Notice Documents were properly admitted under the business-records exception to the hearsay rule.

Properly authenticated records of regularly conducted business activity can be admitted into evidence as an exception to the hearsay rule. Tex. R. Evid. 803(6). The law on the admissibility of business records was succinctly stated by the First Court of Appeals as follows:

> Under Rule 902(10), business records are self-authenticating and require no extrinsic evidence of authenticity if they meet the requirements of Rule 803(6) and are accompanied by an affidavit that complies with subparagraph (B) of the rule and any other requirements of law. Tex. R. Evid. 902(10). Subparagraph (B) provides a template for a sufficient affidavit, which enumerates the elements of Rule 803(6), discussed above. Tex. R. Evid. 902(10)(B).
>
> Rule 902(10)(B) "does not require the affiant to identify the particular person who originally created the business record in order to satisfy the authentication predicate." *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 622 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). "Testimony by a witness or affiant identifying the exhibits as the business records of the proponent of the evidence 'is sufficient evidence to satisfy the authentication requirement of Rule 901(a), regardless of whether the witness had personal knowledge of the contents of this evidence.'" *Id.* (quoting *Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs., Inc.*, 346 S.W.3d 172, 181 (Tex. App.—Amarillo 2011, pet. denied)[] (brackets omitted)[)].

*Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 834 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see also Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 242 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (op. on reh'g) (holding that

7

business records that were generated by a third party were admissible with a standard business-records affidavit).

Here, the crux of Washington's arguments takes aim at the admissibility of the Notice Documents while ignoring the business-records affidavit to which they were attached and under which they were admitted. Washington's argument—that "their forwarding [of the Notice Documents] to the maker of the documents has been disclaimed"—appears to be a reference to when Miller was asked if he had sent out the notice of acceleration and he answered, "Through my letter vendor Hatteras . . . ." Washington implies that Miller was required to have personal knowledge that the Notice Documents were mailed. Miller, however, testified that he had provided Hatteras with the information for the letters; that Hatteras had sent the letters, as shown by the certifications; and that Miller had printed the certifications and had kept them as part of Yellowfin's business records. Under the rules of evidence pertaining to business records, it was not necessary for Miller to have personal knowledge that the Notice Documents were mailed; it was enough that Miller's affidavit identified the documents as records that were kept in the normal course of Yellowfin's business. *See Savoy*, 557 S.W.3d at 834. Moreover, Washington makes no attack on the actual

business-records affidavit[4] or its compliance with Rule 902(10)(B).[5]  We therefore agree with the trial court's conclusion that Washington's attacks go to the weight that a factfinder can give to the Notice Documents, not to their admissibility.  Accordingly, we overrule Washington's third and fifth issues.

## 2.     A business-records affiant is not required to have personal knowledge of the records.

In her seventh issue, Washington argues that the trial court abused its discretion by overruling her lack-of-personal-knowledge objections to Miller's testimony about the Notice Documents.  Assuming that Washington preserved this issue for review,[6] the law (as set forth in the preceding issue) is clear that a business-

---

[4]Washington's brief makes arguments attacking an affidavit, but it appears that those arguments are directed at the Hatteras documents, which Washington appears to treat as affidavits instead of certifications.

[5]In fact, Washington apparently conceded in the trial court that Miller's business-records affidavit complied with Rule 902(10) when her counsel stated that the Hatteras documents needed to be done like Miller's "affidavit [that] was carefully crafted by [Yellowfin's counsel].  And that is, [']I am the custodian of records of the plaintiff and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.[']"  Additionally, the appellate record demonstrates that the business-records affidavit and accompanying records were filed on May 13, 2021, which was more than a month prior to the bench trial.  *See* Tex. R. Evid. 902(10)(A) (requiring the record's proponent to serve the record and the accompanying affidavit on each party to the case at least fourteen days before trial).

[6]Washington made a late objection based on prior inconsistent testimony relating to whether Miller had personal knowledge that the Notice Documents were sent; the trial court sustained that objection.  Other than that sustained objection, it is unclear when Washington specifically objected to Miller's testimony on the basis of lack of personal knowledge and had her objection overruled; the record reflects that

records affiant is not required to have personal knowledge of the contents of the records. *See id.*; *In re A.T.*, No. 02-04-00355-CV, 2006 WL 563565, at *3 (Tex. App.— Fort Worth Mar. 9, 2006, pet. denied) (mem. op.) (stating that a business-records affiant is not required to have personal knowledge of the contents of the records but must have personal knowledge of the manner in which the records were prepared). We hold that the trial court thus did not abuse its discretion by overruling Washington's lack-of-personal-knowledge objections to Miller's testimony about the Notice Documents, and we overrule Washington's seventh issue.

### 3. The trial court was entitled to decide the weight to be given to the Notice Documents.

In her fourth issue, Washington argues that the trial court abused its discretion by giving the Notice Documents any probative value. Although couched as an issue attacking the Notice Documents, most of the arguments in Washington's brief are actually directed at the Hatteras documents certifying that the Notice Documents had been sent. But no matter whether her arguments are directed at the Notice Documents or the Hatteras documents, we cannot say that the trial court abused its discretion by finding that the documents had probative value.

Here, there is no doubt that the Hatteras documents were probative of whether the Notice Documents were sent. Yellowfin, through Miller's business-records affidavit, established that both the Notice Documents and the Hatteras documents

---

Washington mentioned Miller's lack of personal knowledge when she objected on other grounds to the Hatteras documents.

10

were kept in the regular course of its business. Each of the Notice Documents and the Hatteras documents reflect the same address that Washington included in her pro se answer; thus, the documents are internally consistent. Moreover, Washington did not provide any evidence at trial that she did not receive the Notice Documents.

It was within the trial court's purview to weigh the evidence. *See Gonzalez v. Wasserstein*, No. 01-20-00826-CV, 2022 WL 3268528, at *9 (Tex. App.—Houston [1st Dist.] Aug. 11, 2022, no pet.) (mem. op.) ("Unless the evidence is conclusive, the factfinder is entitled to weigh the evidence and to assess witness credibility." (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816–17 (Tex. 2005))); *In re K.H.*, No. 10-21-00073-CV, 2021 WL 4080261, at *4 (Tex. App.—Waco Sept. 8, 2021, pet. denied) (mem. op.) ("In a bench trial, the trial judge is the factfinder who weighs the evidence, resolves evidentiary conflicts, and evaluates the demeanor and credibility of witnesses."). In weighing the Notice Documents and the Hatteras documents and determining that they had probative value, the trial court did not act without regard for any guiding principles.[7] Accordingly, we overrule Washington's fourth issue.

---

[7]We note that nowhere in her brief does Washington argue that the Notice Documents or the Hatteras documents were more prejudicial than probative. The only mentions of "probative value" in the argument section of her brief are as follows:

- "The improper documents were also objected to as Hearsay, Not Trustworthy, failure to meet the business[-]records predicate[,] and of no probative value[;] however[,] the court overruled said objections and admitted the improper documents and ruled [in] [Yellowfin's] favor based

11

## 4. The trial court did not abuse its discretion by admitting the Notice Documents into evidence over Washington's lack-of-trustworthiness objection.

In her sixth issue, Washington argues that the trial court abused its discretion by overruling her lack-of-trustworthiness objection to the Notice Documents and admitting them into evidence. In the argument section of her brief, we find two places in which Washington makes the general argument that the Notice Documents "are not trustworthy . . . as their forwarding to the maker of the documents has been disclaimed." Washington's trustworthiness argument fails because the business-records affidavit, along with Miller's testimony, prove the trustworthiness of the Notice Documents.

Documents created or authored by third parties are admissible as the business records of another business if "(a) the document is incorporated and kept in the course of the testifying witness's business; (b) that business typically relies upon the accuracy of the contents of the document; and (c) the circumstances otherwise indicate the trustworthiness of the document." *Kirk v. Nat'l Collegiate Student Loan Tr.*

---

upon said documents although there is nothing in the documents that stated [the] documents were mailed to the property address CMRRR as required";
- "Absent and [sic] documentary evidence of probative value that the required notice was provided[,] [Yellowfin] can only prove its case via testimony"; and
- "Additionally, the tri[al] court erred in giving the documents it erroneously allowed into evidence any probative value."

*2003-1*, No. 01-17-00722-CV, 2019 WL 966625, at *4 (Tex. App.—Houston [1st Dist.] Feb. 28, 2019, no pet.) (mem. op.) (quoting *Simien*, 321 S.W.3d at 240–41).

Here, Yellowfin provided evidence demonstrating that the Notice Documents, which were attached to Miller's affidavit, met the preceding three requirements. In his affidavit, Miller averred that he is the custodian of Yellowfin's records and is familiar with the manner in which its records are created and maintained; that the facts stated in the affidavit were within his personal knowledge and are true and correct; that the Notice documents were incorporated and kept in the regular course of Yellowfin's business; that "[i]t is typical within the course of [Yellowfin's] business to rely upon the accuracy of the contents of such records"; that the documents "are trustworthy as they were made in conjunction with a promissory note and lien on the purchase of residential real property, which is a heavily regulated industry with significant federal and state laws ensuring proper record-keeping and compliance with lending laws"; and that it was the regular course of business for an employee or representative of Yellowfin to transmit information to be included in such record. As set forth above, Miller testified at trial about Yellowfin's practice of having Hatteras send out all its letters and about how Miller had provided Hatteras with the information for the Notice Documents in this case. Moreover, the Notice Documents contain the same address that Washington included in her pro se answer.

Based on this evidence, we conclude that the trial court did not abuse its discretion by determining that the Notice Documents and accompanying business-

records affidavit showed sufficient indicia of trustworthiness to be properly admitted as business records. *See id.* at \*5–6 (holding that heavily redacted schedule attached to business-records affidavit was not improperly admitted over a trustworthiness objection because, among other things, there were no date discrepancies among the documents). We overrule Washington's sixth issue.

## B.     Sufficiency Challenges

In her first and eighth issues, Washington challenges the sufficiency of the evidence to prove a condition precedent to Yellowfin's recovery and an affirmative defense to recovery. We set forth the standard of review before analyzing her challenges.

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller*, 168 S.W.3d at 827. We indulge "every reasonable inference deducible from the evidence" in support of the challenged

14

finding.  *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue.  *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021).  In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).  If no evidence supports the finding, then we will examine the entire record to determine if the contrary position is established as a matter of law.  *Id.*  We will sustain the issue only if the contrary position is conclusively established.  *Id.*  Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it."  *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019).

Anything more than a scintilla of evidence is legally sufficient to support a finding.  *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003).  More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.  *Gunn*, 554 S.W.3d at 658.  On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence.

15

*McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

### 1. Notice Was Given in Accordance with the Note

In her first issue, Washington argues that the note was not lawfully accelerated because there was no evidence that the Notice Documents were "sent via CMRRR as required by the Purchase Money Note and Deed of Trust." Yellowfin responds that it gave proper notice of its intent to accelerate pursuant to the notice requirements set forth in the note. We agree.

The law generally on the notice that must be given before accelerating a note is as follows:

> When a secured promissory note gives the holder the option to accelerate the maturity of the note upon the maker's default, equity demands notice of several events, unless notice is specifically waived. First, the holder of the note must present the note before accelerating it, demand payment of the past[-]due installments, *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex. 1975), and advise the maker that the note will be accelerated and the entire balance will become due and payable if the delinquency is not cured. *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982).
>
> Thereafter, absent payment of the delinquency, the holder must give notice that the debt has been accelerated. [*Id.*] That notice cuts off the debtor's right to cure the default and gives notice that the entire debt is due and payable. *See Faulk v. Futch*, 147 Tex. 253, 214 S.W.2d 614 (1948).

*Baldazo v. Villa Oldsmobile, Inc.*, 695 S.W.2d 815, 817 (Tex. App.—Amarillo 1985, no writ) (footnote omitted).

16

Washington argues that the Notice Documents did not constitute proper notice because there is no evidence that the notices were "sent via CMRRR as required by the Purchase Money Note and Deed of Trust." In the argument section of her brief, Washington states that it is the deed of trust, not the note, that required notice to be sent via CMRRR. However, the record reflects that the deed of trust required that notice be sent via certified mail (there is no mention of return receipt requested) and that the note required only that notice be mailed.[8]

Here, Yellowfin filed suit to recover the balance due on the note, requesting a judgment against Washington. Under the terms of the note, Yellowfin was required to give notice by mail; the note did not require CMRRR or even certified mail. As explained above in the analysis of the evidentiary challenges, Yellowfin put on evidence through Miller's testimony and the Hatteras documents to show that the Notice Documents had been mailed to Washington.

Washington takes aim at the Hatteras documents, arguing that they do not meet the standards for an affidavit. During the trial, Yellowfin's counsel clarified that the Hatteras documents were not affidavits but were instead certifications that were included within Yellowfin's business records. Based on the record, which includes the

---

[8]The note contains the heading "**9.    MAILING OF NOTICES TO BORROWER**," which states, "You or I may mail or deliver any notice to the address above. You or I may change the notice address by giving written notice. Your duty to give me notice will be satisfied when you mail it." At the outset of the note, it states that "[a] word like 'you' or 'your' means the Lender or 'Note Holder.'"

trial court's statements about the documents before it overruled Washington's objections,[9] it does not appear that the trial court treated the Hatteras documents as separate affidavits but as documents included within the business records submitted by Yellowfin, along with the business-records affidavit by Miller. The trial court determined that the documents were admissible under the business-records exception to the hearsay rule and that Washington's attacks on the documents went to their weight, not their admissibility.

Washington further argues that even if the Hatteras documents were admissible, they "merely stated that a request to send out a particular correspondence was requested to be sent without any evidence or statement that it was sent." However, the evidence about the acceleration notice was not limited solely to documentary evidence. During the defense's case in chief, Miller was cross-examined by Yellowfin's counsel about Yellowfin's relationship with Hatteras. Miller stated that Yellowfin had sent "thousands of letters" to Hatteras and that there had never been any indication that Hatteras had failed to send any of the letters that they represented that they had sent. Yellowfin's counsel further asked Miller about whether the letters were making it to their intended recipients:

> Q . . . [H]ave you been contacted by note holders or by people that you have been trying to contact by letters thus indicating that they are receiving the letters that you believe Hatteras is sending?

---

[9]The trial court's statements are set forth in the background section of this opinion.

A  Yes.

Q  So based on your conduct of business and your relationship with Hatteras, do you believe that Hatteras is sending the letters you asked them to send?

A  Yes.

Moreover, although Washington also argues that Miller lacked the personal knowledge to testify about whether Hatteras had forwarded the Notice Documents, Miller in his role as President of Yellowfin had personal knowledge of (1) the company's business records, which included the Hatteras documents, and (2) the company's relationship and history with Hatteras. And, again, the trial court was free to believe or disbelieve the documentary and testimonial evidence that the Notice Documents had been sent. *See Gonzalez*, 2022 WL 3268528, at *9; *K.H.*, 2021 WL 4080261, at *4. Moreover, there is no evidence in the record that Washington did not receive notice.

Having determined that the note did not require the Notice Documents to be sent via CMRRR and having reviewed the evidence under the applicable standard of review, we hold that there is more than a scintilla of evidence showing that notice was sent as required by the terms of the note, and we overrule Washington's first issue.[10]

---

[10]In her second issue, Washington argues that the trial court erred by awarding damages because the trial court "included damages as if the debt [were] properly accelerated." Because we have held that the debt was properly accelerated, we overrule Washington's second issue.

19

## 2. No Offsets or Payments Pleaded or Proven

In her eighth issue, Washington argues that the trial court abused its discretion by overruling her objections and admitting any testimony from Miller as to the amount due on the note given his lack of personal knowledge.[11] Immediately preceding the section labeled as "Conclusion" at the end of her brief, Washington sets forth the following, which we presume is the argument related to her eighth issue:

1) Appellant [sic] failed to prove all just and lawful offsets were allowed.

> Appellant [sic] [t]estified that he did not know if any payments were made after 2007. Appellant [sic] further testified that he calculated the amount due on his own. Consequently, the amount due is not accurate given there is a question if any payments were made and not credited. [Record citations omitted.]

Although Washington's issue is couched as an attack on the trial court's ruling on an alleged objection to Miller's testimony about the amount due on the note, her argument is actually an attack on the sufficiency of the evidence to prove an

---

[11]Washington's argument appears to be based on questions that her counsel asked during his voir dire of Miller:

Q [By Washington's counsel] [T]here hadn't been a payment on this note since 2007, has there?

A  I -- I do not know.

Q  And you purchased this [note] when?

A  I purchased this in 2019.

After reviewing the record citations that Washington cites to within her eighth issue, we are unable to find whether she made the specific objection that she argues on appeal.

affirmative defense. Yellowfin responds that Washington failed to plead the affirmative defense of payment in either of her petitions. We agree.

Payment is an affirmative defense that the defendant has the burden to plead and prove. *See* Tex. R. Civ. P. 94; *Haddington Fund, LP v. Kidwell*, No. 05-19-01202-CV, 2022 WL 100111, at *12 (Tex. App.—Dallas Jan. 11, 2022, pet. denied) (mem. op.). If a party wishes to prove payment, he must affirmatively plead payment and file an accounting of the payments. Tex. R. Civ. P. 95. Absence of a proper plea of payment renders evidence as to payment inadmissible. *Id.*; *Haddington Fund*, 2022 WL 100111, at *12. An affirmative defense not properly raised in pretrial pleadings is generally waived. *Villarreal v. Myers*, No. 13-20-00215-CV, 2022 WL 868537, at *7 (Tex. App.—Corpus Christi–Edinburg Mar. 24, 2022, no pet.) (mem. op.) (citing *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136–37 (Tex. 2014)).

Because Washington failed to plead the affirmative defense of payment and file an accounting of payments as required under Rules 94 and 95, she has waived her argument that possible payments were not credited against the balance of the note. *See* Tex. R. Civ. P. 94, 95; *Haddington Fund*, 2022 WL 100111, at *12 (holding that Rule 95 prohibited appellees from introducing any evidence of payments not admitted by appellants because appellees did not describe their payments with particularity or file an account stating the nature of any payments); *Nitishin v. Fed. Debt Mgmt., Inc.*, No. 05-95-00531-CV, 1996 WL 76232, at *5 (Tex. App.—Dallas Feb. 21, 1996, no writ) ("[Appellant] did not plead the affirmative defense of payment. [Appellant] is

therefore barred from proving any additional credits or offsets to the outstanding principal amount not admitted by [appellee].").

Alternatively, there is no basis for Washington's contention on appeal that payments were not credited as she did not produce any evidence of payments at trial.[12] Miller testified that Yellowfin had agreed to waive any payments that were due prior to when it acquired the note and that Yellowfin was seeking to recover only the post-waiver principal of $22,517.11. Yellowfin's business records included a payment schedule showing that the initial balance on the note was $25,650.00 in 2005 and that the balance due, assuming all payments had been made through June 1, 2019, would have been $22,517.11. Washington did not produce any evidence to contradict this amount.

Because Washington neither pleaded the affirmative defense of payment nor put on evidence of any payments, she did not establish as a matter of law that she was entitled to any offsets on the balance of the note; thus, the uncontradicted evidence on the note's balance supports the judgment against Washington for $22,517.11. Accordingly, we overrule Washington's eighth issue.

---

[12]In fact, her counsel stated during his motion for directed verdict, "And I would suggest to you that 12 years with no payment is knowledge that a contract is terminated."

## IV. Conclusion

Having overruled each of Washington's eight issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  November 3, 2022