**Opinion issued May 28, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00798-CV
_____

**AFRICAN AMERICAN HISTORIC PRESERVATION COMMITTEE, INC., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 23-CV-0049**

---

## MEMORANDUM OPINION

Appellant, African American Historic Preservation Committee, Inc. ("the Committee"), sued the City of Texas City ("the City") and the State of Texas ("the State") for inverse condemnation following the demolition of its property. The trial court granted the State's plea to the jurisdiction and dismissed the Committee's

claims against the State.[1]  The Committee raises two issues on appeal.  First, it contends that the trial court abused its discretion in overruling the Committee's objections to the State's jurisdictional evidence.  Second, it asserts that the trial court erred in granting the State's plea to the jurisdiction.

We affirm.

### Background

The Committee, a non-profit organization, owns real property at 6006 Carver Avenue, in Texas City, Texas (the "property").  On July 29, 2022, the City's Fire Marshal sent a letter notifying the Committee that the condition of the building situated on the property was "unsafe" and a "substandard commercial structure" which violated, among other things, sections of the City's Fire Code and numerous City ordinances.  The letter advised the Committee that it "must contact the Code Enforcement Office no later than Aug[ust] 8, 2022[,] to discuss the next step."

On August 3, 2022, the City's municipal court of record entered an emergency order of abatement (the "abatement order").  The abatement order stated that "the State on behalf of the City sought the enforcement of its ordinances," and inspections revealed that the building was a "substandard structure" that had "structural defects and/or conditions arising from long-term deterioration that threaten[ed] its structural

---

[1]     The Committee also asserted a statutory taking claim and sought declaratory relief. The City is not a party to this appeal.

integrity and presented[ed] a clear and imminent danger to the life, safety[,] or property" of others and was also "an attractive nuisance." The abatement order authorized demolition of the building "in the best interest of the public health, safety[,] and welfare" and allowed the City to recoup the costs of abatement. The building was demolished on August 11, 2022.

The Committee sued the State and the City for inverse condemnation, alleging that they had committed an unconstitutional taking in violation of Article I, section 17 of the Texas Constitution[2] and a statutory taking under section 2007.002 of the Texas Government Code.[3] The Committee also sought a declaratory judgment that the municipal court's abatement order was void for lack of service, and therefore, the court lacked personal jurisdiction over the Committee.

The State filed a plea to the jurisdiction challenging the trial court's subject-matter jurisdiction on standing grounds. It argued that the Committee could not trace its injury to any action by the State because the State took no role in the condemnation and abatement of the property; rather, the action that caused the alleged injury was traceable only to the City. The State asserted that although the abatement order stated that the State was acting "on behalf" of the City, there was no evidence that this was the case, and instead, the evidence demonstrated that the

---

[2]    *See* TEX. CONST. art. I, § 17.

[3]    *See* TEX. GOV'T CODE ANN. § 2007.002.

3

City had acted alone. Thus, it argued, the trial court was deprived of jurisdiction, and the Committee's claims against it should be dismissed. The State also asserted that the Committee had failed to allege facts establishing that its sovereign immunity had been waived.

In support of its plea, the State attached the following business record affidavit to its plea:

**BUSINESS RECORD AFFIDAVIT**

BEFORE ME, the undersigned authority, personally appeared Jennifer Price who, being by me duly sworn, deposed as follows:

1.      "My name is Kyle L. Dickson.  I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated and the facts stated herein are true and correct.["]

2.      "I am the City Attorney for the City of Texas, Texas.  My office is under public seal.  I execute this affidavit in my official capacity as the City Attorney for the City of Texas, Texas.  Attached hereto are copies of records from the City of Texas City not kept under seal."

3.      "The forty-two (42) pages attached to this affidavit are true and correct copies of records from the City Attorney's Office of the City of Texas City.  The original records from which the attached copies were made are kept by the City of Texas City in the regular course of its business, and it was the regular course of business of the City of Texas City for an employee or official with knowledge of the act or event, recorded to make and/or keep the record or to transmit information thereof to be included in such record; and the record was made and/or kept at or near the time or reasonably soon thereafter. The documents attached hereto are exact duplicate of the original."

FURTHER AFFIANT SAYETH NOT.

_____
Kyle L. Dickson
City Attorney, City of Texas, Texas

4

STATE OF TEXAS                          §
                                        §
COUNTY OF GALVESTON                      §

SWORN TO AND SUBSCRIBED before me by a person known to be or satisfactorily proven to be Kyle L. Dickson in his/her capacity as the City Attorney for the City of Texas, Texas, on this 12 day of April 2023.



Notary Public, in and for the State of Texas

BAILEY LYNN ATKINSON
Notary Public, State of Texas
Comm. Expires 09-01-2025
Notary ID 133308428

The affidavit was accompanied by two exhibits: the municipal court of record's abatement order and the July 29, 2022 letter notifying the Committee of the building's code violations (the "July 29, 2022 letter").

The Committee responded to the State's plea, arguing that the State's business record affidavit was fatally defective. It objected to the affidavit on the grounds that (1) it was executed by City Attorney Kyle Dickson, but it declared that Jennifer Price personally appeared before the notary, and therefore, it was not clear, positive, direct, otherwise credible or free from contradictions and inconsistences, and it lacked trustworthiness; (2) it was legally insufficient because there was no assertion that Dickson or Price was the custodian of records for the City or was familiar with the way the records were created and maintained; and (3) the State failed to produce any of the documents that it relied on its for its plea to the jurisdiction in its Texas

Rule of Civil Procedure 194.2 initial disclosures, and thus, the evidence must be excluded.

The Committee also asserted that the State's plea should be denied because (1) sovereign immunity does not apply to constitutional and statutory takings claims; (2) even if the State had specifically challenged the Committee's pleadings, its pleadings were more than sufficient for jurisdictional purposes, and the State had failed to show how the Committee's pleadings affirmatively negated the existence of jurisdiction; (3) there was no admissible evidence attached to the State's plea; and (4) even if the evidence attached to the State's plea was admissible, it was not undisputed or conclusive. The Committee further asserted that the State's arguments in its plea were deficient because (1) the State had raised "no-evidence" complaints which are improper in the context of a plea to the jurisdiction; (2) the State had failed to present any competent evidence to support its jurisdictional arguments; (3) even if the trial court were to consider the inadmissible hearsay documents attached to the State's plea, a fact issue existed as to whether the State or the City (or both) was the party who committed the taking at issue, as evidenced by the language in the municipal court's abatement order;[4] and (4) the Committee propounded requests for admissions on the State that tracked the assertions it made in its plea to the

---

[4] The abatement order began: "BE IT REMEMBERED that on this 3rd day of August 2022 came to be heard the State's Motion for Emergency Abatement . . . ."

jurisdiction, yet instead of asserting that it took no role in the condemnation and abatement or any action to cause the Committee's injury, it refused to admit or deny the requested admissions, choosing instead to offer vague and improper explanations.

In its reply, the State asserted that the evidence attached to its plea was not hearsay or otherwise was excepted from the hearsay rule; Texas Rule of Civil Procedure 193.6 ("Failing to Respond – Effect on Trial") was inapplicable because a jurisdictional challenge is not a trial; and the State's failure to supplement its disclosures did not unfairly surprise or prejudice the Committee. The State further asserted that the trial court did not have subject matter jurisdiction over the State in the case because the State had sovereign immunity and the Committee had no standing to sue the State, the Committee affirmatively pleaded facts that negated jurisdiction, and there were no genuine issues of material fact to overcome the State's plea. The State attached to its reply three documents: (1) the City's responses to the Committee's interrogatories; (2) the City's responses to the Committee's requests for admission; and (3) an excerpt from the deposition of Charlesa Bell Gary, the Committee's President ("Gray").

The Committee filed a sur-reply, asserting that the State's discovery responses were inadmissible hearsay, they could only be used against the party that answered the discovery (the City), and not the Committee, and the State's assertion in its reply

that "the State and the City are separate jural entities and cannot act on behalf of one another" was wrong because the City, when performing a governmental function, acts as an agent of the State.

The trial court held a hearing on the State's plea to the jurisdiction on October 4, 2023. The court overruled the Committee's objections to the State's evidence attached to its plea and reply and entered an order granting the State's plea the same day. The trial court entered findings of fact and conclusions of law. This interlocutory appeal followed.[5]

**Plea to the Jurisdiction**

In its first issue, the Committee asserts that the trial court abused its discretion in overruling its objections to the State's jurisdictional evidence. In its second issue, it asserts that the trial court erred in granting the State's plea to the jurisdiction. Because these issues are intertwined, we address them together.

**A.    Governing Law and Standard of Review**

Subject matter jurisdiction is essential to a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149–50 (Tex. 2012). The burden is on the

---

[5]    A party may appeal an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A party may challenge the trial court's jurisdiction either on the pleadings or by evidence negating jurisdictional facts. *Id.* We first consider whether the plaintiff's petition alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Id.*; *see also Heckman*, 369 S.W.3d at 150 ("[O]ur [jurisdictional] analysis begins with the live pleadings."). If the pleadings on their face do not affirmatively negate jurisdiction, we next consider relevant jurisdictional facts. *Id.* We consider evidence submitted to negate the existence of jurisdiction, and we must consider such evidence when necessary to resolve the jurisdictional issue. *Id.*

If a plea implicates jurisdictional facts, the court decides a plea to the jurisdiction on a summary judgment standard. *Miranda*, 133 S.W.3d at 227–28. We construe the pleadings liberally in favor of the plaintiff, taking as true all factual allegations, and look to the pleader's intent. *Heckman*, 369 S.W.3d at 150; *Miranda*, 133 S.W.3d at 226. We resolve every reasonable inference in the non-movant's favor. *Miranda*, 133 S.W.3d at 228. However, we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Id.* We review a trial court's ruling on a plea to the jurisdiction de novo. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006).

9

**B.      Standing**

In its plea to the jurisdiction, the State first challenged the Committee's standing to sue.

Standing is a jurisdictional prerequisite to suit; it may not be waived, and it may be raised for the first time on appeal. *Heckman*, 369 S.W.3d at 150. The plaintiff has the burden to affirmatively demonstrate standing. *Id.* at 154. Standing is determined at the time suit is filed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993); *Rolle v. Hardy*, 527 S.W.3d 405, 417 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We review de novo the jurisdictional issue of whether a party has standing to sue. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

The standing inquiry focuses on the plaintiff's alleged injury. Under Texas law, standing requires that (1) the plaintiff must be personally injured, and the injury must be concrete and particularized, actual or imminent, not hypothetical; (2) the plaintiff's injury must be fairly traceable to the defendant's conduct; and (3) the plaintiff's injury must be likely redressable by the requested relief. *In re Abbott*, 601 S.W.3d 802, 808 (Tex. 2020) (orig. proceeding). If the plaintiff lacks standing, the trial court lacks subject matter jurisdiction over the case, and the case must be dismissed. *Heckman*, 369 S.W.3d at 150–51.

In its challenge to the Committee's standing, the State argued that the Committee could not trace its injury to any action by the State because the State took no role in the condemnation and abatement of the property; rather, the action that caused the Committee's alleged injury was traceable only to the City. The State argued that although the Committee pleaded that the State had acted "by and through Texas City," and the abatement order did, in fact, state that the State was acting "on behalf" of the City, there was no evidence that this was the case, and instead, the evidence demonstrated that the City had acted alone. Thus, it asserted, the Committee lacked standing to bring suit against the State.

The State's arguments related to the Committee's standing challenge only the second element of standing: whether the Committee's alleged injury is fairly traceable to the State's conduct. The State does not assert that the Committee was not injured or that the alleged injury was not concrete, particularized, and actual or imminent, or that it was not likely redressable by the requested relief. We therefore consider only whether the Committee alleged that its injury was fairly traceable to the State's conduct.

We begin our jurisdictional analysis with the live pleadings, which we liberally construe in the Committee's favor. *See Heckman*, 369 S.W.3d at 150; *Miranda*, 133 S.W.3d at 226. In its petition, the Committee asserted that the State's actions constituted an unconstitutional taking of the Committee's property in

violation of Article I, section 17 of the Texas Constitution. The petition alleged that "the State of Texas, on Texas City's behalf, filed a Motion for Emergency Abatement in a proceeding allegedly initiated by a Petition for Abatement and Removal of a Public Nuisance in Cause No. PH-0523-01." It also alleged that the municipal court of record subsequently issued an emergency order of abatement ordering that the property be abated, and that the property was later demolished. The petition further alleged that "the State of Texas, by and through Texas City, intentionally performed certain acts in the exercise of its lawful authority, that resulted in the taking of [the] [p]roperty, which was allegedly done for public use, and these actions proximately caused [the Committee's] damages."

Construing the pleadings liberally, the Committee alleged that the State had filed an emergency motion for abatement of the property in the municipal court, the municipal court ordered the property abated, and the property was thereafter demolished. Based solely on the allegations in the petition, we conclude that the Committee pleaded sufficient jurisdictional facts, for standing purposes, to establish that its alleged injuries are fairly traceable to the State. *See Heckman*, 369 S.W.3d at 150.

We next consider the State's challenge, in its plea, to the existence of jurisdictional facts. *See Heckman*, 369 S.W.3d at 150; *Miranda*, 133 S.W.3d at 227. In its plea, the State asserted that it had proffered undisputed evidence demonstrating

12

that it took no role in the condemnation and abatement of the Committee's property, and that the City had acted alone.

As an initial matter, we address the Committee's assertion that the State improperly raised "no evidence arguments" in its plea to the jurisdiction. Specifically, it complains of the State's assertions that it (1) took no role in the condemnation and abatement of the Committee's property; (2) took no action to cause the Committee injury; (3) no state agency took any action to abate or condemn the property; (4) the Committee could not trace its alleged injury to the State; and (5) although the abatement order stated that the State was acting "on behalf of" the City, there was no evidence that that was actually the case.

The Committee is correct that "no evidence" grounds are not permitted in a plea to the jurisdiction. *See HS Tejas, Ltd. v. City of Houston*, 462 S.W.3d 552, 556 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("[T]he defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to demonstrate the existence of a fact issue."). However, a "no-evidence" plea occurs when a defendant only raises no-evidence points in its jurisdictional plea. The State asserts that it did not bring a "no-evidence" plea. We agree.

The State's plea challenged the sufficiency of the Committee's pleadings, and it presented evidence to negate the existence of jurisdictional facts, rather than simply denying the existence of jurisdictional facts and requiring the Committee to

13

demonstrate the existence of a fact issue as to its standing. *See id*. (holding city failed to meet its burden to challenge jurisdiction where it did not argue that facts alleged by plaintiff failed to establish jurisdiction and it failed to present its own evidence to establish that trial court lacked jurisdiction).

In support of its challenge to the existence of jurisdictional facts, the State attached to its plea two exhibits accompanied by a business record affidavit: (1) the municipal court order approving abatement of the property, and (2) the July 29, 2022 letter from the City Fire Marshal informing the Committee of the abatement action. In its reply, the State produced three additional documents that it asserted showed only action by the City, and not by the State: (1) the City's responses to the Committee's interrogatories; (2) the City's responses to the Committee's requests for admission; and (3) an excerpt from the deposition of Gary, the Committee's President.

In its brief on appeal, the Committee asserts that the trial court abused its discretion in overruling its evidentiary objections to the State's proffered evidence. Before we consider whether the evidence presented by the State negated the existence of jurisdiction, we must first determine whether the trial court properly admitted the State's evidence.

## C. Evidentiary Rulings

The decision whether to admit or exclude evidence lies within the trial court's discretion. *See Bay Area Healthcare Grp. Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). Thus, we review a trial court's admission of evidence under an abuse-of-discretion standard. *See Owens–Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or its decision is arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

When reviewing matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). And we must "uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens–Corning*, 972 S.W.2d at 43.

### 1. Discovery Responses

The Committee asserts that the trial court abused its discretion by overruling its objection to the State's use of, and reliance on, the City's discovery responses for two reasons. First, under the Texas Rules of Civil Procedure, interrogatory answers and responses to requests for admissions can be used only against the party that

answered the discovery. Second, the City's discovery responses constituted impermissible hearsay.

Texas Rule of Civil Procedure 197.3 provides: "Answers to interrogatories may be used only against the responding party." TEX. R. CIV. P. 197.3. Under rule 198.3, "[a] matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." TEX. R. CIV. P. 198.3.

In its reply to the Committee's response to the State's plea, the State asserted that while there was no evidence that the State had participated in the underlying abatement action, there was ample evidence that the City was the sole actor. In support of its assertion, the State pointed to the City's responses to Interrogatory No. 9, which asked:

> H. What involvement, if any, did the State of Texas have in your alleged meeting(s) with Plaintiff's representatives;
>
> I. What involvement, if any, did the State of Texas have in your alleged inspection; and
>
> J. What involvement, if any, did the State of Texas have in your alleged issuance of the July 29, 2022 notice.

The City answered "None" to each interrogatory question.

Further, in its responses to the Committee's requests for admissions, the City admitted the following:

16

- The State did not file the "Petition for Abatement and Removal of a Public Nuisance," in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The State did not authorize the filing of the Petition for Abatement and Removal of a Public Nuisance," in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The City did not have the State's authorization to file, in the State's name, the "Petition for Abatement and Removal of a Public Nuisance," in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The State did not file the "State's Motion for Emergency Abatement," in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The State did not authorize the filing of the "State's Motion for Emergency Abatement," in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The City did not have the State's authorization to file, in the State's name, the "State's Motion for Emergency Abatement," in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The State did not request the "Emergency Order of Abatement" that was ultimately signed in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The State did not authorize any request for the entry of the "Emergency Order of Abatement," that was ultimately signed in the

17

case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The City did not have the State's authorization to request, in the State's name, the entry of the "Emergency Order of Abatement," that was ultimately signed in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The State "was not involved in the abatement action," *i.e.,* case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01;

- The State "took no role in the condemnation and abatement of Plaintiff's property";

- No state agency took any action to abate or condemn Plaintiff's property;

- "[A]ll evidence points to the fact that Texas City acted alone" in the abatement action, *i.e.,* the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01; and

- "Texas City did, in fact, act alone" in the abatement action, *i.e.,* the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523-01.

The Committee argues that the State impermissibly used the City's responses to interrogatories and requests for admission against the Committee by attempting to absolve itself of liability and blame the City for the abatement of the Committee's property, in violation of the Texas Rules of Civil Procedure.[6] The State responds

---

[6] In support of its argument, the Committee cites *Wal–Mart Stores v. Deggs*, 968 S.W.2d 354 (Tex. 1998), *Fiebig v. Fiebig*, No. 14-12-01166-CV, 2012 WL 9390623 (Tex. App.—Houston [14th Dist.] Oct. 22, 2012, no pet.), *Allen v. Allen*, 280 S.W.3d

that the City's discovery responses are, in fact, being used against the City itself by shifting liability and blame to the City, and away from the State. We agree. That this use arguably eliminates the State as a party does not alter the Committee's ability to obtain redress for its alleged injury.

The Committee also asserts that the trial court abused its discretion in admitting the City's discovery responses because the responses constituted hearsay. The State responds that the trial court properly admitted the City's responses because they are statements against interest which are excepted from the rule against hearsay.

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). A "statement against interest," which is an exception to the hearsay rule, is one that "a reasonable person

---

366 (Tex. App.—Amarillo 2008, pet. denied), and *Buck v. Blum*, 130 S.W.3d 285 (Tex. App.—Houston [14th Dist.] 2004, no pet.). These cases are factually distinguishable from this case in a key respect—in each case, a party sought to use the discovery responses of one defendant against another defendant. *See Wal–Mart Stores*, 968 S.W.2d at 357 (concluding trial court erred in upholding directed verdict against Wal-Mart based on co-defendant's deemed admissions); *Fiebig*, 2012 WL 9390623, at *3 (noting "[m]atters admitted by one defendant are not conclusively established as to another defendant"); *Allen*, 280 S.W.3d at 376 ("In a suit against multiple defendants, evidence in the form of responses to requests for admissions made by one defendant is not admissible against other defendants."); *Buck*, 130 S.W.3d at 285 (rejecting plaintiff's argument that neurologist's answers to interrogatories could be used as evidence against co-defendant employer to create fact issue as to whether he was acting in course and scope of his employment when he committed alleged assault and battery against plaintiff).

19

in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." TEX. R. EVID. 803(24)(A). Here, the City was the declarant of the discovery responses, the responses were indisputably against the City's own interest, and the responses exposed the City to civil liability. *See id.* Thus, the City's responses do not constitute hearsay.

We conclude that the trial court did not abuse its discretion in admitting the City's discovery responses over the Committee's objections.

## 2. Business Record Affidavit

Next, the Committee asserts that the trial court abused its discretion by overruling the Committee's objection to the business record affidavit attached to the State's plea because it was facially defective. It argues that the affidavit was not clear, positive, direct, otherwise credible, or free from contradictions because it claimed that two different affiants, Price and Dickson, appeared before the notary. The Committee also asserts that the affiant—whether Price or Dickson—failed to present any facts to establish how she or he was familiar with the manner in which the attached records were created or maintained. Thus, the Committee reasons, the

20

records attached to the affidavit were unauthenticated and constituted inadmissible hearsay.

The affidavit states, in relevant part:

BEFORE ME, the undersigned authority, personally appeared Jennifer Price who, being by me duly sworn, deposed as follows:

1. "My name is Kyle L. Dickson. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated and the facts stated herein are true and correct.

The State acknowledges the facial discrepancy in the affidavit. However, it points out that Dickson, the affiant, explained the scrivener's error at the hearing on the State's plea[7] and stated that he was the custodian of the attached documents.

Evidence offered in support of a plea to the jurisdiction is treated as "summary judgment evidence," and we therefore apply the principles of Texas Rule of Civil Procedure 166a when considering a party's evidentiary objection. *See Tex. Dep't of*

---

[7] In response to the Committee's objection to the affidavit, Dickson explained:

> I provide[d] the affidavit. I signed it. There's a failure to correct the name because previous -- before my use [sic] was Jennifer Price.
> . . . .
>
> Previous form was for Mrs. Price. And so, when I pulled the form up, I neglected to change her name.
>
> . . . .
>
> And I'm the one who signed it and that's my signature who notarized. And I am the one who had custody of all the documents that were provided.

*Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *see also Miranda*, 133 S.W.3d at 228 (noting plea to jurisdiction based on evidence mirrors and is governed by same rules as traditional motions for summary judgment). Rule 166a(j)(4) provides:

> *Form of Affidavit or Declaration; Further Testimony*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated. A document referred to in an affidavit or declaration must be attached and either sworn or certified. . . . Defects in the form of an affidavit or declaration or its attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

TEX. R. CIV. P. 166a(j)(4).

The Committee's objections to the State's affidavit—that it was facially defective and it failed to state whether the affiant was the custodian of records and how the affiant was familiar with the manner in which the records were created or maintained—are objections to the form of the affidavit. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (stating lack of personal knowledge is defect in form); *UT Health Sci. Ctr.–Hous. v. Carver*, No. 01-16-01010-CV, 2018 WL 1473897, at *5–6 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, no pet.) (mem. op.) ("Formal defects include objections to hearsay, lack of foundation, lack of personal knowledge, sham affidavit, statement of an interested witness that is not clear, positive direct, or free from contradiction, best evidence, self-serving statements, and unsubstantiated opinions."); *see also 8920 Corp. v. Alief*

22

*Alamo Bank*, 722 S.W.2d 718, 720 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (holding "minor discrepancy" in summary judgment affidavit, such as incorrect name of person making supporting affidavit, is not cause for reversal). Under rule 166a(j)(4), the Committee was therefore required to object to the defects and allow the State an opportunity to amend the affidavit. The record shows that although the Committee objected to the defects in its response to the State's plea, it did so the day before the hearing, and consequently, the State did not have an opportunity to amend the affidavit. Although the State indicated in its reply that it was prepared to file an amended plea to correct any defects in the form of the affidavit, the trial court granted the State's plea following the hearing the same day. Because the State was not given an opportunity to amend the alleged defects, we conclude that the defects are not grounds for reversal of the trial court's order. *See* TEX. R. CIV. P. 166a(j)(4).

The Committee also challenged the admission of the records attached to the affidavit on the grounds that they were unauthenticated because the affiant failed to present any facts in the business record affidavit to establish how the affiant was familiar with the manner in which the records were attached or maintained. The State asserts that the affidavit was self-authenticating because it substantially complied with Texas Rule of Evidence 902.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901. A proponent of evidence is not required to bring forth "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility" for business records accompanied by an affidavit that complies with Texas Rule of Evidence 902(10). *See* TEX. R. EVID. 902(10) (providing types of evidence that are self-authenticating).

A business records affidavit properly authenticates evidence when it substantially complies with Texas Rule of Evidence 902(10)(b). *See AMPM Enters., Inc. v. Borders & Long Oil, Inc*., No. 05-22-00262-CV, 2023 WL 5767563, at *3 (Tex. App.—Dallas Sept. 7, 2023, no pet.) (mem. op.) (stating rule 902(10) includes sample form of affidavit and that affidavit, which substantially complies with provisions of rule, suffices); *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 622 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (noting language in rule 902(10(b) is "example" and that substantial compliance is sufficient). Rule 902(10)(b) suggests the following to include in a business record affidavit:

> 1. I am the custodian of records [*or* I am an employee or owner] of _____ and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.
>
> 2. Attached are ___ pages of records. These are the original records or exact duplicates of the original records.

3. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. [*or* It is the regular practice of _____ to make this type of record at or near the time of each act, event, condition, opinion, or diagnosis set forth in the record.]

4. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. [*or* It is the regular practice of _____ for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them.]

5. The records were kept in the course of regularly conducted business activity. [*or* It is the regular practice of _____ to keep this type of record in the course of regularly conducted business activity.]

6. It is the regular practice of the business activity to make the records.

*Id.*

The State's business record affidavit substantially complied with the provisions of rule 902. Specifically, the affidavit states the number of pages attached (requirement 2), that the documents were made and kept in the regular course of business of the City (requirements 4 and 5), that the documents were made or kept at or near the time of each event (requirement 3), and that the documents are exact duplicates of the original documents (requirement 6). Although Dickson did not state in the affidavit that he was the custodian of the documents or familiar with how they were kept, he nonetheless satisfied the burden of substantial compliance with rule 902. Testimony by a witness or affiant identifying the exhibits as the business records of the proponent of the evidence "is sufficient evidence to satisfy the authentication requirement of Rule 901(a), regardless of whether [the witness] had

25

personal knowledge of the contents of this evidence." *H2O Sols., Ltd.*, 438 S.W.3d at 622. Although he did not testify at the hearing, Dickson affirmatively represented to the trial court that he "had custody of all the documents" that were attached to the affidavit.[8] Thus, we conclude that the business record affidavit substantially complied with Texas Rule of Evidence 902.

The Committee also argues that the trial court abused its discretion in admitting the records attached to the affidavit—the abatement order and the July 29, 2022 letter—because they constituted inadmissible hearsay. The State responds that both documents were admissible because neither was offered to prove the truth of the matter asserted and they each satisfied an exception to the hearsay rule.

"Hearsay" is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). A "matter asserted" means "any matter a declarant explicitly asserts" and "any matter implied by a statement, if the probative value of the statement as offered flows from the declarant's belief about the matter." TEX. R. EVID. 801(c)(1)–(2).

The State asserts that neither the order nor the letter was offered to prove the truth of the matter asserted. We agree. The matter asserted in the abatement order

---

8     *See generally* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03(a)(1), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A (Tex. State Bar R. art. X, § 9) ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal.").

26

was that an emergency order of abatement was warranted, and the matter asserted in the letter was that the property was an "unsafe" and "substandard commercial structure." The State, however, offered the evidence to show that the State was not involved in the abatement action undertaken by the City, as evidenced by the fact that the abatement order was signed by Dickson, the City Attorney, and the July 29, 2022 letter was sent by the City Fire Marshal.

The Committee also argues that the documents constituted hearsay because they did not qualify as admissible public records, as they were neither sealed and signed nor signed and certified. *See* TEX. R. EVID. 902(1)–(2). However, as discussed above, the documents were excepted from the hearsay rule because they were records of a regularly conducted business activity as shown by the business record affidavit. *See* TEX. R. EVID. 803(6). Therefore, we conclude that the trial court did not abuse its discretion in admitting the abatement order and letter over the Committee's objections.

### 3. Deposition Testimony

The Committee argues that the one-page excerpt of deposition testimony proffered by the State was insufficient to support the State's plea because the transcript was not authenticated and the testimony was not clear, positive and direct, and otherwise credible and free from contradictions and inconsistencies.

27

The State asserted that the following testimony from the deposition of the Committee's witness, Gray, supported its contention that the State had no role in the abatement action:

Q:      [C]ould you please list, if any, any state officials for the State of Texas that you know or would have reason to know participated in this underlying demolition of your building?

A:      Oh, no. I don't.  I think it was all on a local level.  But I think that where there came some confusion because -- and that could be, 'cause I'm almost certain, that on one of those public information requests, going back in my head, the document, seems like there was a document with the State of Texas on it.

Q:      Thank you.  And just -- I'm just covering my bases so if this is repetitive please excuse me.  But could you list to the extent that you know or have reason to know any state agencies of the State of Texas that would have been involved in this understand [sic] action?

A:      No, sir.  I can't list any 'cause I'm -- I'm not aware.  I don't -- I can't even say I recall.  I'm not totally sure on that, but I think that's where the state part came in.  But nobody.  No, sir.

Texas Rule of Civil Procedure 166a(c) does not require that deposition excerpts submitted in support of or in opposition to a summary judgment motion be authenticated.  *McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex. 1994); *see also Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, L.L.P.*, 499 S.W.3d 169, 181 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (Boyce, J., concurring) ("For more than two decades, summary judgment movants have not been required to authenticate excerpts from depositions taken in the case in which

28

the motion was filed"). Because the standard for resolving a plea to the jurisdiction mirrors that of a summary judgment motion under Texas Rule of Civil Procedure 166a(c), *see Miranda*, 133 S.W.3d at 225–26, it follows that deposition excerpts included as exhibits to a plea to the jurisdiction should not be treated differently. *See City of Fort Worth v. Hart, as next friend of K.H.*, No. 10-17-00258-CV, 2019 WL 91676, at *4 (Tex. App.—Waco Jan. 2, 2019, pet. denied) (mem. op.). We conclude that the deposition excerpt attached to the State's plea does not, therefore, require authentication.

With regard to the Committee's assertion that the witness's deposition testimony was not clear, positive and direct, and otherwise credible and free from contradictions and inconsistencies, this is a defect in form for which a party must object and obtain a ruling on its objection from the trial court. *See Friedrichs v. Coastal Ref'g & Mkt'g, Inc.*, No. 13-01-647-CV, 2003 WL 21025884, at *2 (Tex. App.—Corpus Christi–Edinburg May 8, 2003, no pet.) (mem. op., not designated for publication) (noting objections to statements that are not clear, positive, direct, or free from contradictions go to form of summary judgment proof). Because the Committee did not object to this evidence and obtain a ruling on its objection, we conclude that its argument is not preserved for our review. *See Wren v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 498 (Tex. App.—Fort Worth 2002, no pet.).

We hold that the trial court did not abuse its discretion in overruling the Committee's objections to the State's evidence offered in support of its plea to the jurisdiction.

We overrule the Committee's first issue.

## D. Jurisdictional Evidence

Having concluded that the trial court did not abuse its discretion in admitting the State's evidence attached to its plea and reply, we now consider whether the proffered evidence negated the existence of jurisdiction.

The abatement order approving the demolition of the Committee's property states that the State was acting "on behalf" of the City. The order was approved as to form and substance by the City Attorney. In its July 29, 2022 letter, the City Fire Marshal notified the Committee that the condition of the property violated sections of the City's Fire Code and numerous City ordinances, and that it must contact the City Code Enforcement Office to discuss the next steps. In its responses to the Committee's interrogatories asking what involvement the State had in the abatement action, the City responded "none." In its responses to the Committee's request for admissions, the City admitted, among other things, that the State "was not involved in the abatement action"; it "took no role in the condemnation and abatement of Plaintiff's property"; no state agency took any action to abate or condemn Plaintiff's property; "all evidence point[ed] to the fact that Texas City acted alone" in the

abatement action; and "Texas City did, in fact, act alone" in the abatement action. In the deposition testimony attached to the State's reply, the witness testified that she believed that all the events of the abatement action took place "on a local level," and she was not aware of any state official or agency that took part in the abatement of the Committee's property.

Once the State presented evidence in support of its challenge to the existence of the trial court's subject matter jurisdiction, it was incumbent on the Committee to raise a genuine issue of material fact to overcome the challenge. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018) ("[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction."). "A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

The Committee attached two exhibits to its response to the State's plea: the State's initial disclosures and the State's responses to the Committee's first request for admissions. The Committee asserted that when the State was asked to admit that it had nothing to do with the abatement and condemnation, the State "objected, waffled, and gave evasive (improper) responses to requests for admissions that

tracked the allegations set forth in the State's plea to the jurisdiction."[9]   The

Committee argued that the State's unwillingness to admit or deny the Committee's

requests for admissions created a fact issue.  We disagree.

The State's discovery responses (or lack thereof) do not raise a genuine issue

of material fact as to whether the State was involved in the abatement action.  Here,

the only evidence suggesting the State took part in the abatement action was the

abatement order, which was signed by the City Attorney.  All of the other evidence

---

[9]     For example, the Committee's Request for Admission No. 1 asked:

> **Request for Admission No. 1:**
> Please admit that the State of Texas did not file the "Petition for Abatement and Removal of a Public Nuisance," in the case styled and numbered, *State of Texas v. African American Historic Preservation Committee*, Cause No. PH0523–01.
>
> **Response:**
> The State objects to this request as overly broad and unduly burdensome.
>
> The State of Texas is a sovereign governmental entity that consists of over 150 state agencies, departments, and commissions.  Each of these agencies are separate jural entities from one another. Plaintiff's request is overbroad and unduly burdensome because it asks that Defendant ascertain information from each of these agencies—none of whom are named parties in this matter.  To the extent Plaintiff seeks admissions from a specific state agency or arm of the state, Plaintiff must subpoena that entity.
>
> Subject to and without waiving the foregoing objections, the City of Texas City has represented in its Motion for Summary Judgment that "The City…filed an abate petition with the Municipal Court of Record in Texas City[.]"  Texas City's Mot. Summ. J. ¶ 4.

before the trial court showed that the City acted alone, and that the State had no role in the abatement action.[10]  Because the Committee presented no more than a scintilla of evidence showing that the State took any part in the condemnation and demolition of its property—i.e., that its injury was fairly traceable to the State's conduct—it failed to overcome the State's jurisdictional challenge.

Accordingly, we hold that the trial court did not err in granting the State's plea to the jurisdiction.  *See Heckman*, 369 S.W.3d at 150–51 (stating if plaintiff lacks standing to bring its claim, trial court lacks subject matter jurisdiction over case, and case must be dismissed).

We overrule the Committee's second issue.

## Conclusion

We affirm the trial court's order granting the State's plea to the jurisdiction. We dismiss any pending motions as moot.

Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

---

[10]  Further, at the hearing on the State's plea, Dickson, the City Attorney, told the trial court that "[t]he State was not a party to our abatement action that was prosecuted through municipal court. . . . The City acted in its own capacity as a home rural municipality."

33